**APPENDIX**

Entered: September 27, 2012
Signed: September 27, 2012

**SO ORDERED**



DAVID E. RICE
U.S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| MICHAEL ALLAN McNEIL, | ) | Case No. 12-18903-DER |
| | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | |
| ———————————————— | ) | |

ORDER OVERRULING OBJECTION TO
CLAIM NO. 3 FILED BY V. PETER MARKUSKI, JR.

The Objection to Proof of Claim [Docket No. 40] (the "Objection") filed by the debtor,

Michael A. McNeil, with respect to Claim No. 3 filed by V. Peter Markuski, Jr. came on for

hearing before this court on September 25, 2012.  Mr. McNeil, Sarah P. McNeil, the Chapter 13

Trustee, and counsel for Mr. Markuski appeared at the hearing at which the court considered the

Objection, the Response to Objection to Proof of Claim [Docket No. 46] filed by Mr. Markuski,

and the arguments of the parties.  For the reasons stated on the record following the hearing, the

court determined that the Objection should be overruled as hereinafter provided.  Accordingly, it

is, by the United States Bankruptcy Court for the District of Maryland, sitting at Baltimore,

- 1 -

*App x. 1*

ORDERED, that the Objection should be, and it hereby is, OVERRULED; and it is further,

ORDERED, that the proof of claim of V. Peter Markuski, Jr. as amended and docketed as Claim No. 3-3 should be, and it hereby is, ALLOWED as (i) a claim for a domestic support obligation entitled to priority under 11 U.S.C. § 507(a)(1), and (ii) a secured claim to the extent Mr. McNeil is ultimately determined to retain an ownership interest in certain real property known as 4721 Middle Court, Ellicott City, Maryland 21043 under the terms of the Judgment of Absolute Divorce entered by the Circuit Court for Howard County, Maryland in McNeil v. McNeil, Case No. 13-C-08-75254, and that interest is not subject to a prior mortgage, judgment or other lien; and it is further,

ORDERED, that entry of this order is without prejudice to renewal of the objection to Claim No. 3 in the event the judgments awarding fees to Mr. Markuski entered by the Circuit Court for Howard County, Maryland that are the basis for the claim are modified by that court or on appeal by the Court of Special Appeals of Maryland or the Court of Appeals of Maryland.

cc:    Michael A. McNeil
       Jeffrey W. Bernstein, Esq.
       Chapter 13 Trustee
       U.S. Trustee

**End of Order**

Appx. 2

Entered: September 27, 2012
Signed: September 27, 2012

**SO ORDERED**



DAVID E. RICE
U.S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

In re:                                    )
                                          )
MICHAEL ALLAN McNEIL,                     )        Case No. 12-18903-DER
                                          )        Chapter 13
                                          )
                  Debtor.                 )
_____        )
                                          )

ORDER OVERRULING OBJECTION TO
CLAIM NO. 4 FILED BY V. PETER MARKUSKI, JR.

The Objection to Proof of Claim [Docket No. 61] (the "Objection") filed by the debtor,

Michael A. McNeil, with respect to Claim No. 4 filed by V. Peter Markuski, Jr. came on for

hearing before this court on September 25, 2012. Mr. McNeil, Sarah P. McNeil, the Chapter 13

Trustee, and counsel for Mr. Markuski appeared at the hearing at which the court considered the

Objection, the Response to Objection to Proof of Claim [Docket No. 67] filed by Mr. Markuski,

and the arguments of the parties. For the reasons stated on the record following the hearing, the

court determined that the Objection should be overruled as hereinafter provided. Accordingly, it

is, by the United States Bankruptcy Court for the District of Maryland, sitting at Baltimore,

Appx. 3

ORDERED, that the Objection should be, and it hereby is, OVERRULED; and it is further,

ORDERED, that the proof of claim of V. Peter Markuski, Jr. docketed as Claim No. 4 should be, and it hereby is, ALLOWED as a claim for a domestic support obligation entitled to priority under 11 U.S.C. § 507(a)(1); and it is further,

ORDERED, that V. Peter Markuski, Jr. shall amend Claim No. 4 within thirty (30) days after entry of an order by the Circuit Court for Howard County, Maryland consistent with this court's Order Granting Motion for Relief from Stay [Docket No. 77] that determines the amount of the attorney's fees to be awarded to Mr. Markuski as Best Interest Attorney on behalf of Mr. McNeil's minor children for the period November 1, 2011 through the filing of this bankruptcy proceeding on May 10, 2012; and it is further,

ORDERED, that entry of this order is without prejudice to renewal of the objection to Claim No. 4 in the event (i) Mr. Markuski does not file an amended proof of claim as provided above, or (ii) after such amended proof of claim is filed, the order awarding such fees to Mr. Markuski is modified by the Circuit Court for Howard County, Maryland or on appeal by the Court of Special Appeals of Maryland or the Court of Appeals of Maryland.

cc:     Michael A. McNeil
        Jeffrey W. Bernstein, Esq.
        Chapter 13 Trustee
        U.S. Trustee

**End of Order**

Appx. 4

Entered: November 05, 2012
Signed: November 05, 2012

**SO ORDERED**



DAVID E. RICE
U.S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| MICHAEL ALLAN McNEIL, | ) | Case No. 12-18903-DER |
| | ) | Chapter 13 |
| Debtor. | ) | |
| | ) | |

## <u>ORDER DENYING MOTION TO RECONSIDER</u>

The court has before it the motion for reconsideration filed by the debtor, Michael A.

McNeil.[1]  The only timely opposition to that motion was filed by V. Peter Markuski, Jr.,[2]  to

which Michael McNeil filed a response.[3]  The motion seeks reconsideration of orders entered by

this court that denied confirmation of Michael McNeil's Chapter 13 plan with leave to amend[4]

and that overruled Michael McNeil's objection to Claims No. 3 and No. 4, both filed by Peter

---

[1]  Motion to Reconsider filed on October 9, 2012 [Docket No. 105].

[2]  Opposition to Motion to Reconsider filed on October 19, 2012 [Docket No. 118].

[3]  Response to V. Peter Markuski Opposition to Motion to Reconsider filed on October 23, 2012 [Docket No. 123].

[4]  Order Denying Confirmation of Chapter 13 Plan with Leave to Amend entered on September 26, 2012 [Docket No. 84].

Appx. 5

Markuski.[5] For the reasons stated below, the motion for reconsideration must be denied as to

each of the three orders in question.

## Jurisdiction

This court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C.

§ 1334, 28 U.S.C. § 157, and Local Rule 402 of the United States District Court for the District

of Maryland.  This is a "core proceeding" under 28 U.S.C. §§ 157(b)(2)(B), 157(b)(2)(L).  The

court's oral findings of fact and conclusions of law were stated on the record in accordance with

Rule 52 of the Federal Rules of Civil Procedure (made applicable here by Rules 9014 and 7052

of the Federal Rules of Bankruptcy Procedure) at the conclusion of a hearing on these matters

held on September 25, 2012.

## Factual and Procedural Background

Michael McNeil represents himself this case.  He also represents himself in a divorce

action filed against him by Sarah McNeil.[6]  In that action, the Circuit Court appointed Peter

Markuski to serve as the best interests attorney for their minor children.[7]  The Circuit Court

entered a Judgment of Absolute Divorce in the divorce action on December 27, 2010 that granted

Sarah McNeil a divorce from Michael McNeil and, among other things, awarded Sarah McNeil

sole custody of their minor children and ordered Michael McNeil to pay monthly alimony and

---

[5] Order Overruling Objection to Claim No. 3 Filed by V. Peter Markuski, Jr. entered on September 27, 2012
[Docket No. 85]; Order Overruling Objection to Claim No. 4 Filed by V. Peter Markuski, Jr. entered on
September 27, 2012 [Docket No. 90].

[6] Docketed as McNeil v. McNeil, Case No. 13-C-08-075254, in the Circuit Court for Howard County, Maryland
(the "Circuit Court").  Michael McNeil was represented in the divorce action by Henry E. Weil of the law firm of
Belli, Weil & Grozbean, P.C. until March of 2010 when the Circuit Court granted Henry Weil's motion to strike his
appearance.

[7] Order Appointing Counsel for a Minor Child entered March 23, 2009, a copy of which is attached as part of the
exhibits to, among other things, Michael McNeil's Memorandum of Law filed in support of his Motion to
Reconsider [Docket No. 105-2, Page 6 of 20].

Appx. 6

child support.[8]  In addition, in the divorce decree the Circuit Court ordered Michael McNeil to

pay Sarah McNeil's attorney's fees[9] and a portion of the fees of Peter Markuski as the best

interests attorney for their children.

Michael McNeil filed his Chapter 13 bankruptcy petition in this court on May 10, 2012,

several days before hearings in the divorce action scheduled by the Circuit Court on various

motions filed by Sarah McNeil.  Michael McNeil is a network security engineer employed by

Federal Network System LLC whose gross annual income exceeds $120,000.00.[10]  Initially, he

filed a plan that proposed to submit $25.00 per month to the Chapter 13 trustee for 60 months – a

total of $1,500.00 – for distribution to his priority and unsecured creditors.[11]  That plan proposed

to modify his monthly alimony payment of $3,000.00, as set by the Circuit Court, and to pay

instead alimony of $1,735.15 per month outside the plan.  Confirmation of the plan was opposed

---

[8]  A copy of the Judgment of Absolute Divorce entered by the Circuit Court is attached as an exhibit to, among other things, one of the proofs of claim filed by Peter Markuski [Claim No. 3-3, Page 9 of 44].  The reasons for granting the divorce and other related relief are set forth at length in a Supplemental Memorandum also entered by the Circuit Court on December 27, 2010, a copy of which is attached as an exhibit to the Memorandum of Law in Support of Confirmation of Debtor's Amended Chapter 13 Plan filed by Michael McNeil on September 18, 2012 [Docket Nos. 75-1 and 75-2].

[9]  Stephen A. Drazin, the divorce attorney for Sarah McNeil, filed a proof of claim totaling $60,604.59 in this case that asserts a priority claim for a domestic support obligation in the amount of $55,030.59 with respect to such fees that was docketed as Claim No. 5-1.  Michael McNeil objected to that claim on the day before the hearing in question here.  Objection to Proof of Claim filed September 24, 2012 [Docket No. 80].  A hearing on the objection to that claim is scheduled for November 7, 2012.

[10]  According to his Schedule I [Docket No. 18, Page 16 of 17], Michael McNeil's monthly gross income is $10,370.32.  In his Chapter 13 Statement of Current Monthly Income [Docket No. 15], Michael McNeil indicates that based upon the six months before the bankruptcy petition was filed his gross monthly income was $12,346.09. The Statement of Financial Affairs filed by Michael McNeil indicates that for the two years immediately preceding the filing of this case, his aggregate gross income was $305,888.47 – that is, the equivalent of a gross monthly income of $12,745.35.

[11]  Chapter 13 Plan filed on May 24, 2012 [Docket No. 16].  In the plan, Michael McNeil also proposed to turnover to the trustee his 2011 federal and state income tax refund checks and the proceeds from his various pending state and federal law suits.

Appx. 7

by the Chapter 13 trustee, Sarah McNeil, and Peter Markuski. Following a hearing held on

July 24, 2012, this court determined that the plan could not be confirmed because, among other

reasons, it did not provide for payment in full of Michael McNeil's then existing pre-petition

arrearages on his domestic support obligations. Accordingly, the court denied confirmation of

Michael McNeil's initial plan and granted him leave to file an amended plan.[12]

     After confirmation of his initial plan was denied, Michael McNeil objected to the proof

of claim filed by Peter Markuski [Claim No. 3-3] that asserted a priority claim for a domestic

support obligation in the amount of $47,936.81 for fees awarded by the Circuit Court.[13]  Michael

McNeil also later objected to a second proof of claim filed by Peter Markuski [Claim No. 4-1]

that asserted a priority claim for a domestic support obligation in the amount of $18,102.53 for

additional fees incurred, but not yet submitted to or awarded by the Circuit Court.[14]  Both

objections were set for hearing on September 25, 2012. Following that hearing, the court

overruled both objections. By his motion, Michael McNeil now seeks reconsideration of those

orders.

     In the meantime, Michael McNeil filed an amended plan.[15]  Although it clarifies

somewhat the provisions of his initial plan, Michael McNeil's amended plan was not materially

different from his initial plan. It continued his initial proposal to submit $25.00 per month to the

---

[12]  Order Denying Confirmation of Chapter 13 Plan with Leave to Amend entered on July 25, 2012 [Docket No. 38].

[13]  Objection to Proof of Claim filed on July 31, 2012 [Docket No. 40].

[14]  Objection to Proof of Claim filed on September 4, 2012 [Docket No. 61].  On September 20, 2012, this court entered an order on Peter Markuski's motion that terminated the automatic stay to the limited extent necessary to permit Peter Markuski to file petitions in the Circuit Court to seek a determination of the amount to be awarded on account of the fees incurred after October 31, 2011, including the fees that are the subject of Claim No. 4-1.  Order Granting Motion for Relief from Automatic Stay [Docket No. 77].

[15]  Amended Chapter 13 Plan filed on August 23, 2012 [Docket No. 56].

App. 8

Chapter 13 trustee. It made clear that Michael McNeil proposed to reduce his monthly alimony

obligation to Sarah McNeil by paying the aggregate amount of his remaining future alimony over

an extended period of time – that is, over the five-year life of his Chapter 13 bankruptcy plan.[16]

Confirmation of the amended plan was again opposed by the Chapter 13 trustee, Sarah McNeil,

and Peter Markuski. Following the hearing held on September 25, 2012, the court determined

that the amended plan – like the initial plan – could not be confirmed because, among other

reasons, it did not provide for payment in full of Michael McNeil's then existing pre-petition

arrearages on his domestic support obligations.[17] As the court stated in its ruling at the hearing,

the amended plan did not provide funds sufficient to pay the $47,936.81 domestic support

obligation claim filed by Peter Markuski and allowed by the court when it overruled Michael

McNeil's objection to Claim No. 3-3 earlier during the same hearing. Based upon the proofs of

claim filed by Peter Markuski, Stephen Drazin and Sarah McNeil, the pre-petition domestic

---

[16] In the Judgment of Absolute Divorce, the Circuit Court ordered Michael McNeil to pay Sarah McNeil alimony in the amount of $3,000.00 per month for 60 months starting on September 1, 2010 – a payment period that would expire during the life of his Chapter 13 plan. The amended plan proposed to extend the payment period through May 10, 2017. As a result, the amended plan proposed to reduce Michael McNeil's monthly alimony payment to Sarah McNeil from $3,000.00 to $2,438.01. Although it was not a ground upon which the court denied confirmation of the amended plan, the court made clear in its ruling at the September 25, 2012 hearing that a plan proposing to modify the alimony awarded to Sarah McNeil was not confirmable and that such relief to the extent appropriate should be obtained not from the Bankruptcy Court, but from the Circuit Court. Caswell v. Lang (In re Caswell), 757 F.2d 608, 610-611 (4th Cir. 1985) ("[I]t was not the 'intent of the new Bankruptcy Code to convert the bankruptcy courts into family or domestic relations courts – courts that would in turn, willy-nilly, modify divorce decrees of state courts.'") (citing In re Garrison, 5 B.R. 256, 260 (Bankr. E.D. Mich. 1980)).

[17] A Chapter 13 plan must provide for payment in full of all priority claims. 11 U.S.C. § 1322(a)(2). Domestic support obligations are entitled to treatment as priority claims. 11 U.S.C. § 507(a)(1)(A). The claims asserted by Sarah McNeil for alimony arrears and by Stephen Drazin and Peter Markuski for attorney's fees are domestic support obligations within the meaning of the Bankruptcy Code definition of that term. 11 U.S.C. § 101(14A). Beaupied v. Chang (In re Chang), 163 F.3d 1138 (9th Cir. 1998); Miller v. Gentry (In re Miller), 55 F.3d 1487 (10th Cir. 1995); In re Dvorak, 986 F.2d 940 (5th Cir. 1993). Although the Fourth Circuit has not published an opinion addressing this issue, the unpublished opinion of Stark v. Bishop (In re Bishop), 1998 U.S. App. LEXIS 12900 (4th Cir. 1998), reached the same conclusion as the published decisions of the Fifth, Ninth, and Tenth Circuits.

App. 9

support obligations of Michael McNeil may well exceed $140,000.00.[18]   Accordingly, the court

denied confirmation of Michael McNeil's amended plan and granted him leave to file an

amended plan.  By his motion, Michael McNeil now seeks reconsideration of that order.

### Discussion of Issues

Michael McNeil requests this court to (i) reconsider its rulings at the September 25, 2012

hearing, (ii) sustain his objections to the claims filed by Peter Markuski, and (iii) confirm his

amended plan.  For the reasons that follow, the motion for reconsideration will be denied as to

each of the three orders in question.

Although not designated as such, Michael McNeil's motion is in essence a motion to alter

or amend judgment under Rule 59(e) of the Federal Rules of Civil Procedure (as made applicable

here by Rule 9023 of the Federal Rules of Bankruptcy Procedure).  In his motion papers,

Michael McNeil relies upon reported opinions in Socialist Workers Party v. Leahy, 957 F. Supp.

1262 (S.D. Fla. 1997), and Cover v. Wal-Mart Stores, Inc., 148 F.R.D. 294 (M.D. Fla. 1993), for

the proposition that a court may grant reconsideration of an order or judgment under Rule 59(e)

if the movant demonstrates some reason why the court should reconsider its prior decision and

sets forth facts and law of a strongly convincing nature to induce the court to reverse its prior

decision.  As both of the opinions relied upon by Mr. McNeil make clear, a motion for

---

[18]   In addition to the other domestic support obligation claims discussed above, Sarah McNeil filed a proof of claim in this case that asserts, among other things, a priority claim for a domestic support obligation in the amount of $19,922.14 with respect to back alimony that was docketed as Claim No. 6-1.  Michael McNeil objected to that claim on the day before the hearing in question here.  Objection to Proof of Claim filed September 24, 2012 [Docket No. 81].  A hearing on the objection to that claim is scheduled for November 7, 2012.

App. 10

reconsideration is not to be used to reiterate arguments or to supply authorities available at the time of the hearing.[19]

The United States Court of Appeals for the Fourth Circuit has adopted three limited grounds for granting a motion for reconsideration under Rule 59(e) that are essentially the same as those applied in the opinions referred to by Michael McNeil.  In the Fourth Circuit, the three grounds for granting relief under Rule 59(e) are: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice."  United States v. Westinghouse Savannah River Co., 305 F.3d 284, 290 (4th Cir. 2002).  See also, Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998); EEOC v. Lockheed Martin Corp., 116 F.3d 110, 112 (4th Cir. 1997); Collison v. Int'l Chem. Workers, 34 F.3d 233, 236 (4th Cir. 1994); Hutchinson v. Stanton, 994 F.2d 1076, 1081(4th Cir. 1993); Keeler v. Acad. of Amer. Franciscan History, Inc. (In re Keeler), 273 B.R. 416, 420 (D. Md. 2002); In re Gates, 214 B.R. 467, 470 (Bankr. D. Md. 1997).

As the Fourth Circuit has said, a Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to entry of judgment." Pac. Ins. Co., 148 F.3d at 403 (quoting 11 Wright, et al., Federal Practice and Procedure § 2810.1, at 127-28 (2d ed. 1995)).  In the Fourth Circuit's view, "[i]n general,

---

[19] The Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure do not make provision by name for motions for reconsideration.  Such motions are sometimes also made or considered under Rule 52(b) (made applicable by Bankruptcy Rule 7052) and under Rule 60(b) (made applicable by Bankruptcy Rule 9024).  Neither of those rules, however, would result in application of a standard that is more favorable to Michael McNeil than the one that applies under Rule 59(e).  Dowell v. State Farm Fire & Cas. Auto Ins. Co., 993 F.2d 46, 48 (4th Cir. 1993) (a Rule 60(b) motion "is not a substitute for a timely and proper appeal" and a losing party must show, among other things, "exceptional circumstances"); Wal-Mart Stores, Inc. v. El-Amin (In re El-Amin), 252 B.R. 652, 657 (Bankr. E.D. Va. 2000) ("the purpose of [Rules 52(b) and 59(b)] is the correction of an egregious error of law or fact, not to allow a losing party to resubmit unsuccessful arguments").

App. 11

'reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly.'" Id. (quoting 11 Federal Practice and Procedure, at 124).

Michael McNeil raises three arguments that he contends are a basis for reconsideration of the three orders in question. First, he asserts that Peter Markuski's Claim No. 3-3 is not entitled to be treated as a secured debt. Next, he asserts that Peter Markuski's fees are not "domestic support obligations" as defined by 11 U.S.C. § 101(14A). Lastly, Michael McNeil argues that Peter Markuski was not validly appointed by the Circuit Court as the best interests attorney for his minor children and thus has no standing to file claims against him in this court. All of these arguments were raised by Michael McNeil and considered by this court prior to entry of the orders in question, and none of them justifies the "extraordinary remedy" of reconsideration under Rule 59(e).

Claim No. 3-3 filed by Peter Markuski in the amount of $47,936.81 states that the basis for the claim against Michael McNeil is "Domestic Support Obligation (attorney's fees – BIA)" that is secured by a "Judgment Lien" against real estate. The proof of claim also asserts that the entire amount of the claim is entitled to priority under 11 U.S.C. § 507(a) because it is a domestic support obligation under 11 U.S.C. § 507(a)(1). Attached to the proof of claim as supporting documentation are: (i) a statement of account calculating the amount of the claim based upon various fees awarded to Peter Markuski and the interest accrued thereon, (ii) a copy of the Order entered by the Circuit Court appointing Peter Markuski as the best interests attorney, (iii) a copy of an order entered on January 20, 2010 by the Circuit Court awarding fees in the amount of $8,591.75 to be paid by Michael McNeil to Peter Markuski, (iv) a copy of the Judgment of Absolute Divorce entered on December 27, 2010 by the Circuit Court, which includes the award of additional fees in the amount of $21,064.05 to be paid by Michael McNeil

App. 12

to Peter Markuski, (v) a copy of an order entered on May 5, 2011 by the Circuit Court awarding

fees in the amount of $7,026.65 to be paid by Michael McNeil to Peter Markuski, and (vi) a copy

of the Supplemental Memorandum entered on December 8, 2011 by the Circuit Court, which

includes the award of additional fees in the amount of $15,525.45 to be paid by Michael McNeil

to Peter Markuski.

In the objection filed by Michael McNeil with respect to Claim No. 3-3, he asserts in

paragraph 5(b) that Peter Markuski's fee claim is not entitled to treatment as a secured claim for

a number of reasons, including the assertion that it "is not perfected." Paragraph 5(a) and its

many subparts list reasons asserted by Michael McNeil as to why the fees awarded to Peter

Markuski are not child support – that is, not a domestic support obligation entitled to the

§ 507(a)(1) priority asserted in the proof of claim. At the hearing, Michael McNeil argued (or

had the opportunity to argue) all of the many issues raised in his objection. In addition, at the

September 25, 2012 hearing Michael McNeil argued his contention that Peter Markuski was not

validly appointed by the Circuit Court as a best interest attorney under Maryland law.[20]

Each of these arguments was made by Michael McNeil at the hearing or in his various

pleadings filed prior to the hearing, and he is not permitted to raise and argue them for a second

time by way of a motion for reconsideration under Rule 59(e).

In his motion for reconsideration, Michael McNeil also raises for the first time two new

arguments (or variations on his prior arguments) with respect to Peter Markuski's claims. He

refers this court to the opinion of the Court of Special Appeals of Maryland in Cochran v.

Griffith Energy Service, 191 Md. App. 625 (2010), as support for his contention that Claim

---

[20] This contention was also set out on pages 5 through 8 of the Memorandum of Law in Support of Confirmation of Debtor's Amended Chapter 13 Plan filed by Michael McNeil on September 18, 2012 [Docket No. 75].

Appx. 13

No. 3-3 is not secured by a judgment lien and for his new contention that the claims contain

faulty interest calculations.  He also refers the court to a student law review article concerning

allowance of claims for domestic support obligations, They're Just Letting Anyone in These

Days: The Expansion of § 523(a)(5)'s "Domestic Support Obligation" Exception to Discharge,

28 Emory Bankr. Dev. J. 637 (2012).  These authorities were available prior to the hearing, and

cannot be submitted now in the guise of a Rule 59(e) motion as an attempt to bolster arguments

that were not successful at the hearing.

   For these reasons, it is by the United States Bankruptcy Court for the District of

Maryland, sitting at Baltimore,

   ORDERED, that the Motion to Reconsider [Docket No. 105] should be, and it hereby is,

DENIED.


<div align="center">

**END OF ORDER**

</div>


cc:  Debtor
   Creditor-Peter Markuski, Esq.
   Chapter 13 trustee
   U.S. Trustee

App. 14

Case 1:13-cv-02569-WDQ   Document 8-1   Filed 10/07/13   Page 16 of 81
Case 12-00829   Doc 1   Filed 12/06/12   Page 1 of 8
Case 1:13-cv-02569-WDQ   Document 1-5   Filed 09/05/13   Page 1 of 8

## IN THE  UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### Baltimore Division

| | | |
|---|---|---|
| RE: Michael Allan McNeil | * | **Case No.  12−18903 DER** |
| **Debtor** | * | **Chapter 13** |
| _____ | * | **Adversary Proceeding No.** _____ |
| **MICHAEL ALLAN MCNEIL** | * | |
| **Plaintiff** | * | *12 - 00829* |
| **v.** | * | |
| **V. PETER MARKUSKI, JR.** | * | |
| **Defendant** | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## <u>COMPLAINT</u>

**COMES NOW**, Michael Allan McNeil, the Plaintiff and asks this to hold proceedings to determine the validity, priority, or extent of a lien or other interest in property that the Defendant **V. Peter Markuski, Jr.** may or may not have along with the dischargeability of his claims in bankruptcy.

2011-12-06 Adversary Complaint Against Markuski.odt

App. 15

Case 1:13-cv-02569-WDQ   Document 8-1   Filed 10/07/13   Page 17 of 81
Case 12-00829   Doc 1   Filed 12/06/12   Page 2 of 8
Case 1:13-cv-02569-WDQ   Document 1-5   Filed 09/05/13   Page 2 of 8

## FACTS
## JURISDICTION AND VENUE

1. This Adversary Proceeding is brought pursuant to FRPB 7001

   (2) seeking an order, judgment and decree from this Court determining the

   validity, priority, and extent of any liens, claims, encumbrances, and interests,

   including any interests of the various claims of V. Peter Marcuski submitted to this

   court in the Plaintiff's main Bankruptcy Case.

2. This Adversary Proceeding is brought pursuant to FRPB 7001 (2) seeking an

   order, judgment and decree from this Court determining the validity, priority, and

   extent of any liens, claims, encumbrances, and interests, including any interests of

   the various claims of V. Peter Marcuski submitted to this court in the Plaintiff's

   main Bankruptcy Case.

3. This Adversary Proceeding is also brought pursuant to  FRPB 7001(6) a

   proceeding to determine the dischargeability of a debt claimed owed to V. Peter

   Marcuski.

4. This Adversary Proceeding is also brought pursuant to FRPB 7001 (9) a

   proceeding to obtain a declaratory judgment relating to any of the foregoing;

5. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.

   §157 and 1334 and 11 U.S.C. §§105, 547 and 550.

6. Venue in this proceeding is proper in this district pursuant to 28 U.S.C. §§1408

   and 1409.

7. This Complaint is a core proceeding pursuant to 28 U.S.C. §157(b)(2) arising out

Appx. 16

of and relating to the Chapter 11 case of the Debtor, which is currently pending in

this Court.

## THE PARTIES

8.  The Plaintiff is a citizen of Columbia, Howard County, Maryland and he is a

Debtor under Chapter 13 of Title 11 of the United States Code.

9.  The Defendant V. Peter Markuski, Jr  is a citizen of Maryland and is an attorney

who's office is located in Laurel,  Maryland,.

## FACTS COMMON TO ALL COUNTS

10. On May 10, 2012, the Plaintiff files a voluntary petition for chapter 13 bankruptcy

with this court.

11. On July 16, 2012 the Defendant files his proof of claim (Claim 3-3) against the

Plaintiff alleging the following:

    a. That the Defendant has a secure lien against the Plaintiff's Property.

    b. That the Defendant's is a "Domestic Support Obligation"

    c. That the Defendant has multiple Judgments a against the Plaintiff

    which are as follows:

        i.    Judgment entered on 1/15/10 for $8,591.75 which was

            paid.

        ii.    Judgment entered on 12/22/10 for $21064.05 which which

            he is claiming interest on for $2,914.34.

        iii    Judgment entered on 4/29/11 for $7026.65 which which

            he is claiming interest on for $725.76

3

Appx. 17

Case 1:13-cv-02569-WDQ   Document 8-1   Filed 10/07/13   Page 19 of 81
Case 12-00829   Doc 1   Filed 12/06/12   Page 4 of 8
Case 1:13-cv-02569-WDQ   Document 1-5   Filed 09/05/13   Page 4 of 8

      iv        Judgment entered on 12/2/11 for $15,527.45 which which

                      he is claiming interest on for $680.56

12. The only recorded judgment against the Plaintiff by the Defendant was indexed on December 29, 2011 for the amount of $21.064.05

13. Defendant's has filed a fraudulent claim stating he has a secure lien upon the Plaintiff's property for $47,936.81, when at most the Defendant could only possibly claim as secure lien upon the Plaintiff's of approximately $24000.00.

14. On August 16, 2012 the Defendant files a priority claim (Claim 4-1) against the Plaintiff's estate for $18102.53, claiming that that claim is part of a Domestic Support Order, where he claims that that claim is priority.

15. The Defendant is fraudulently trying to obtain a preference by filing a claim under oath in order to obtain more monies from the Plaintiff's Bankruptcy Estate which he is simply is not entitled to.

16. The Defendant is claiming is also claiming that the monies ordered by the Howard County Circuit Court is a Domestic Support Order in accordance with the Bankruptcy Code.

17. The Defendant is not a spouse of the Plaintiff's child, nor his child's parent, nor is he any of the Plaintiff's legal guardian, or a responsible relative of the Plaintiff's children, nor is he a government entity. Additionally, none of the monies that he is claiming is recoverable by the aforementioned persons or entity.

App. 18

Case 1:13-cv-02569-WDQ   Document 8-1   Filed 10/07/13   Page 20 of 81
Case 12-00829   Doc 1   Filed 12/06/12   Page 5 of 8
Case 1:13-cv-02569-WDQ   Document 1-5   Filed 09/05/13   Page 5 of 8

18. The monies owed to the Defendant do not meet Section 101(14A)'s definition of a support obligation.[1]

19. It should be noted, that Section 101(14A) was put in as part of Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

20. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") of section 101(14A) Congress codified the definition of "Domestic Support Order" where before the definition was determined by the Judiciary.

---

1   Section 101(14A) of the Code states:

The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is--

(A) owed to or recoverable by--

  (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
  (ii) a governmental unit;

(B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of--

  (i) a separation agreement, divorce decree, or property settlement agreement;
  (ii) an order of a court of record; or
  (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

2011-12-06 Adversary Complaint Against Markuski.odt

Appx. 19

Case 1:13-cv-02569-WDQ   Document 8-1   Filed 10/07/13   Page 21 of 81
Case 12-00829   Doc 1   Filed 12/06/12   Page 6 of 8
Case 1:13-cv-02569-WDQ   Document 1-5   Filed 09/05/13   Page 6 of 8

## **COUNT 1 – THE DEFENDANT FILED A FALSE SECURE CLAIM**

21. The Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1-20 above.

22. The Defendant has lied to this court and informing this court that all his claims were based off a lien of the Plaintiff's property.

23. The Defendant does not have a lien against the Plaintiff property as stated in his claim.

24. The Defendant knowing he does not have lien for the full amount that he claims compounded his lies by informing this court that he had judgment lien which entitled him to 10% interest on all monies owed.

25. The Defendant and his attorney are attorneys who have been admitted to this court.

26. The Defendant's claims were filed in "bad faith"

27. The Defendant and his attorney willfully lied to this court about  the nature and the extent of the Defendant's claims against the Plaintiff.

**WHEREFORE,** the Plaintiff prays concerning **Count 1** that this court do one or any combination of the following to bring about justice:

1.  Order that the Defendant's Claim be Denied or Disallow the Defendant's claim if it has the authority to do so.

2.  Order that the Defendant's Claim be denied as secure claim in the entirety.

6

Appx 20

Case 1:13-cv-02569-WDQ   Document 8-1   Filed 10/07/13   Page 22 of 81
Case 12-00829   Doc 1   Filed 12/06/12   Page 7 of 8
Case 1:13-cv-02569-WDQ   Document 1-5   Filed 09/05/13   Page 7 of 8

3.  Determine and Order the adjustment of the Defendant's claim to reflect the secure amounts, interest and insecure amounts would have been filed if the Defendant had filed a claim that was truthful and honest.

4. Order that the Defendant or his attorney be fine or imprison for filing a fraudulent claim.

5.  Order any such relief that this court can grant to further justice in this case and to cause the Defendant and his attorney not to willfully lie to this court again.

## COUNT 2 – THE DEFENDANT DOMESTIC SUPPORT CLAIM

28. The Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1-24 above.

29. The Defendant claim is not a "Domestic Support Order" as defined by Congress. And therefore is not a priority "Domestic Support Order" claim.

**WHEREFORE**, the Plaintiff ask that this court as to **Count 2** to determined that the Defendant's claims are not a Domestic Support Order Claims, and ordered that the Defendant's claims be denied as Domestic Support Order claims, along with ordering any such relieve that his court can grant to further the cause of justice.

2011-12-06 Adversary Complaint Against Markuski.odt

Appx. 21

Case 1:13-cv-02569-WDQ   Document 8-1   Filed 10/07/13   Page 23 of 81
Case 12-00829   Doc 1   Filed 12/06/12   Page 8 of 8
Case 1:13-cv-02569-WDQ   Document 1-5   Filed 09/05/13   Page 8 of 8

## <u>COUNT 3 – CONSERNING THE DISCHARGEABILITY OF THE DEFENDANT'S CLAIM</u>

30. The Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1-28 above.

31. The Defendant claim is not a "Domestic Support Order" as defined by Congress. And therefore is not a priority "Domestic Support Order" claim.

32. The Defendant has claimed that his claims can not be discharged in bankruptcy but must be paid 100% in full.

**WHEREFORE**, the Plaintiff ask that this court as to **Count 3** to Order that the Defendant's claims are not "Domestic Support Order" and that they can be discharged in bankruptcy along with ordering any such relieve that his court can grant to further the cause of justice.

Michael A. McNeil
7014 Gentle Shade Road
Apartment 402
Columbia, MD 21046
410-505-8617
mamcneil@gmail.com

2011-12-06 Adversary Complaint Against Markuski.odt

Appx. 22

Entered: July 30, 2013

Signed: July 29, 2013

**SO ORDERED**



DAVID E. RICE
U.S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **MICHAEL A. McNEIL,** | ) | Case No. 12-18903-DER |
| | ) | Chapter 7 |
| Debtor. | ) | |
| —————————————————— | ) | |
| | ) | |
| **MICHAEL A. McNEIL,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 12-0829-DER |
| | ) | |
| **V. PETER MARKUSKI, JR.,** | ) | |
| | ) | |
| Defendant. | ) | |
| —————————————————— | ) | |

## ORDER GRANTING MOTION TO DISMISS

The motion of V. Peter Markuski Jr. to dismiss this adversary proceeding came on for hearing before this court on April 2, 2013. At the conclusion of the hearing, the court held this matter under advisement and requested that the parties file additional memoranda of law. The

App. 23

Case 1:13-cv-02569-WDQ   Document 8-1   Filed 10/07/13   Page 25 of 81
Case 12-00829   Doc 16   Filed 07/30/13   Page 2 of 9
Case 1:13-cv-02569-WDQ   Document 1-1   Filed 09/05/13   Page 2 of 9

court has considered the motion, the opposition, the memoranda of law, and the arguments made by the parties, and is prepared to rule on the motion.

The court has jurisdiction over this proceeding under 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and Local Rule 402 of the United States District Court for the District of Maryland. This proceeding is a "core proceeding" under 28 U.S.C. §§ 157(b)(2)(B), 157(b)(2)(I).

The debtor, Michael A. McNeil, represents himself in this adversary proceeding and in his related main bankruptcy case pending in this court.[1]  On December 6, 2012, Michael McNeil filed a Complaint against Peter Markuski, which initiated this adversary proceeding, regarding the proofs of claim filed by Peter Markuski asserting priority domestic support obligation claims. In Count One of the Complaint, Michael McNeil seeks a determination regarding the validity, priority, or extent of a lien that Peter Markuski has in McNeil's property and further asks the court to fine or imprison Peter Markuski or his attorney for filing a fraudulent claim. Count Two of the Complaint seeks a determination that Peter Markuski's claims are not a "domestic support obligation" within the meaning of the definition in § 101(14A) of title 11 of the United States Code (the "Bankruptcy Code"). Lastly, Count Three of the Complaint seeks a determination that Peter Markuski's claims are not excepted under § 523 of the Bankruptcy Code from the effect of the discharge granted to him by this court because such claims are not domestic support obligations – that is, a determination that the debts to Peter Markuski are dischargeable.

By his Motion to Dismiss Plaintiff's Complaint [Docket No. 7], Peter Markuski seeks entry of an order dismissing the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure (made applicable here by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure) for failure to state a claim upon which relief can be granted. Peter Markuski argues that the

---

[1]  In re Michael Allan McNeil, Case No. 12-18903-DER.

Appx.24

Case 1:13-cv-02569-WDQ   Document 8-1   Filed 10/07/13   Page 26 of 81
Case 12-00829   Doc 16   Filed 07/30/13   Page 3 of 9
Case 1:13-cv-02569-WDQ   Document 1-1   Filed 09/05/13   Page 3 of 9

Complaint should be dismissed under the doctrines of res judicata or collateral estoppel by reason of this court's prior rulings in Michael McNeil's main bankruptcy case. For the reasons that follow, the Complaint must be dismissed.

Although his bankruptcy case has precipitated much litigation in this court, many of the background facts and circumstances (including those relevant to this adversary proceeding and the pending motion) are not in dispute. Michael McNeil represents himself in a divorce action filed against him by Sarah McNeil in the Circuit Court for Howard County, Maryland (the "Circuit Court") docketed as McNeil v. McNeil, Case No. 13-C-08-075254 (the "Divorce Action"). The Circuit Court appointed Peter Markuski to serve as the best interests attorney for the two minor children of Michael McNeil and Sarah McNeil. Stephen Drazin is an attorney representing Sarah McNeil in the Divorce Action. The Circuit Court entered a Judgment of Absolute Divorce on December 27, 2010 that granted Sarah McNeil a divorce from Michael McNeil and, among other things, ordered Michael McNeil to (i) pay alimony and child support to Sarah McNeil, and (ii) pay Sarah McNeil's attorney's fees and a portion of the fees of Markuski as the best interest attorney for their children. By subsequent orders entered in the Divorce Action, the Circuit Court ordered Michael McNeil to pay additional fees to both Peter Markuski and Stephen Drazin.[2]

Michael McNeil filed a voluntary bankruptcy petition in this court on May 10, 2012 seeking relief under Chapter 13 of the Bankruptcy Code. Confirmation of his initial, amended,

---

[2] Michael McNeil has also filed a complaint in this court against Stephen Drazin in which he seeks the same relief as that sought against Peter Markuski in this Adversary Proceeding. See McNeil v. Drazin, Adversary Proceeding No. 12-00783. Stephen Drazin consented to the relief sought in Count I and an order avoiding judicial lien was entered on January 14, 2013. Stephen Drazin then filed a motion to dismiss Counts II and III of that complaint on substantially the same grounds as those asserted here by Markuski. That motion also came on for hearing on April 2, 2013, and it will be ruled upon in a separate order.

Appx. 25

Case 1:13-cv-02569-WDQ   Document 8-1   Filed 10/07/13   Page 27 of 81
Case 12-00829   Doc 16   Filed 07/30/13   Page 4 of 9
Case 1:13-cv-02569-WDQ   Document 1-1   Filed 09/05/13   Page 4 of 9

and second amended Chapter 13 plans was denied for primarily the same reasons, as summarized in this court's Order Denying Motion to Reconsider entered on November 5, 2012 [Main Case Docket No. 143]. One of the crucial reasons the court denied confirmation of these plans was that Michael McNeil was not proposing to make payments sufficient to cure his pre-bankruptcy arrearages on domestic support obligations. After confirmation of his second amended plan was denied without leave to amend, Michael McNeil filed a motion to convert his case to one under Chapter 7 of the Bankruptcy Code [Main Case Docket No. 240].[3] The court entered an Order granting the debtor's motion on January 22, 2013.

Section 507(a)(1) of the Bankruptcy Code specifies that domestic support obligations are entitled to treatment as priority claims. The term "domestic support obligation" is defined in § 101(14A) of the Bankruptcy Code to include a debt owed to or recoverable by a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative that is established by a separation agreement, divorce decree, property settlement agreement or order of a court of record. This adversary proceeding stems from Michael McNeil's continuing assertion that his obligation to pay the attorney's fees awarded to Peter Markuski by the Circuit Court is not a domestic support obligation.

As previously stated, Peter Markuski filed two proofs of claim asserting claims for domestic support obligations entitled to treatment as priority claims under § 507(a)(1) of the Bankruptcy Code. Claim Number 3-3, filed on July 16, 2012, asserts a priority claim in the amount of $47,936.81 for judgments against Michael McNeil for non-payment of attorney's fees

---

[3] The conversion of the main bankruptcy case from one under Chapter 13 to one under Chapter 7 does not impact the issues presented here. The definition of the term "domestic support obligation" in § 101(14A) applies in a case under any Chapter of the Bankruptcy Code. Moreover, the exception to discharge under § 523(a)(5) for a domestic support obligation applies to cases under Chapter 7 and Chapter 13 of the Bankruptcy Code. See 11 U.S.C. §§ 523(a).

~4~

Appx. 26

Case 1:13-cv-02569-WDQ   Document 8-1   Filed 10/07/13   Page 28 of 81
Case 12-00829   Doc 16   Filed 07/30/13   Page 5 of 9
Case 1:13-cv-02569-WDQ   Document 1-1   Filed 09/05/13   Page 5 of 9

owed to Peter Markuski as the best interest attorney for McNeil's children. Claim Number 4-1, filed on August 16, 2012, in the amount of $18,102.53 (as amended at Claim Number 4-2, filed on June 13, 2013, in the amount of $9,964.39), asserts a priority claim for additional best interest attorney fees awarded to Peter Markuski on May 17, 2013 by the Circuit Court for fees incurred through and including May 10, 2012 – the date Michael McNeil filed his bankruptcy petition.

On July 31, 2012, Michael McNeil filed an objection to Claim No. 3-3 [Main Case Docket No. 40]. After Peter Markuski filed a response [Main Case Docket No. 46], this court held an evidentiary hearing on September 25, 2012. Although he had not expressly done so in his objection papers, at the hearing Michael McNeil argued that the claim filed by Peter Markuski is not a domestic support obligation. For the reasons stated on the record at the hearing,[4] the court entered an Order on September 27, 2012 [Main Case Docket No. 85] that overruled the objection to Claim No. 3-3. As stated in the Order, Claim No. 3 filed by Peter Markuski was allowed as "a claim for a domestic support obligation entitled to priority treatment under 11 U.S.C. § 507(a)(1)" and "a secured claim to the extent Mr. McNeil is ultimately determined to retain an ownership interest in certain real property." Michael McNeil filed a timely Notice of Appeal with respect to that Order [Main Case Docket No. 165]. His appeal remains pending before the United States District Court for the District of Maryland as of the date of this order.[5]

---

[4]  Although Michael McNeil has contended otherwise before this court on numerous occasions, it is a well-settled matter of bankruptcy law that fees owed to a guardian *ad litem* for a debtor's child are considered child support and thus are a domestic support obligation within the meaning of § 101(14A) of the Bankruptcy Code and are entitled to treatment as a priority clam under § 507(a)(1).  See Beaupied v. Chang (In re Chang), 163 F.3d 1138 (9th Cir. 1998); Miller v. Gentry (In re Miller), 55 F.3d 1487 (10th Cir. 1995); Kretschmer v. Levin (In re Levin), 306 B.R. 158 (Bankr. Md. 2004); Sinton v. Blaemire (In re Blaemire), 229 B.R. 665 (Bankr. Md. 1999).

[5]  See McNeil v. Markuski, Civil Action No. 1:12-CV-03706-WDQ. Michael McNeil also appealed this court's order that overruled his objection to, and allowed as a domestic support obligation, Claim No. 5 filed by Stephen

Appx. 27

Case 1:13-cv-02569-WDQ   Document 8-1   Filed 10/07/13   Page 29 of 81
Case 12-00829   Doc 16   Filed 07/30/13   Page 6 of 9
Case 1:13-cv-02569-WDQ   Document 1-1   Filed 09/05/13   Page 6 of 9

Similarly, on September 4, 2012, Michael McNeil filed an objection to Claim No. 4-1 [Main Case Docket No. 61]. After Peter Markuski filed a response [Main Case Docket No. 67], this court held an evidentiary hearing on September 25, 2012 and entered an Order on September 27, 2012 [Main Case Docket No. 90] that overruled the objection to Claim No. 4-1. In the Order, Claim No. 4 filed by Peter Markuski was also allowed as "a claim for a domestic support obligation entitled to priority treatment under 11 U.S.C. § 507(a)(1)."

When ruling on a Rule 12(b)(6) motion, "the Court must accept as true all well-pleaded allegations in the complaint, including all reasonable inferences that may be drawn from them, in the light most favorable to the plaintiff." Hemelt v. Pontier (In re Pontier), 165 B.R. 797, 798 (Bankr. D. Md. 1994); see also Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 (4th Cir. 1999) (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993)). "[A] complaint should not be dismissed 'merely because the court doubts that the plaintiff will ultimately prevail; so long as a plaintiff colorably states facts which, if proven, would entitle him to relief, the motion to dismiss should not be granted'." Advanced Health-Care Servs., Inc. v. Radford Cmty Hosp., 910 F.2d 139, 145 (4th Cir. 1990) (quoting Adams v. Bain, 697 F.2d 1213, 1216 (4th Cir. 1982)). However, "while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (brackets in original); see also, Ashcroft v. Iqbal, 556 U.S. 662 (2009). The pleadings must plausibly suggest that the plaintiff is entitled to relief. Bell Atl.

---

Drazin. That appeal is also pending before the United States District Court for the District of Maryland. See McNeil v. Drazin, Civil Action No. 1:12-CV-03819-WDQ.

Appx. 28

Case 1:13-cv-02569-WDQ   Document 8-1   Filed 10/07/13   Page 30 of 81
Case 12-00829   Doc 16   Filed 07/30/13   Page 7 of 9
Case 1:13-cv-02569-WDQ   Document 1-1   Filed 09/05/13   Page 7 of 9

<u>Corp. v. Twombly</u> at 557.  In applying this standard, the court is mindful that when a plaintiff represents himself (as is the case here) a court should afford some leniency to the pro se litigant regarding the form of his pleadings.  <u>McNeil v. United States</u>, 508 U.S. 106 (1993).  Considered under these standards, the Complaint does not state a claim on which relief can be granted and must be dismissed.

The premise of Michael McNeil's argument is that (i) he made a fundamental procedural error when he chose to file objections to Peter Markuski's claims (which were treated as a contested matter) rather than to file a complaint (which would have commenced an adversary proceeding), and (ii) he is therefore now entitled to litigate again in this adversary proceeding the adverse result obtained in his prior contested matter.  The answer to this argument is simple. Treatment of his objections to Peter Markuski's claims as a contested matter was not a mistake and, even if it was a mistake, Michael McNeil is not entitled to litigate again a prior adverse ruling which is now on appeal.

This court has already determined that the amounts owed to Peter Markuski as the best interest attorney, and allowed as filed at Claim No. 3-3, are secured claim to the extent Michael McNeil is determined to have an ownership interest in the marital real property.  Peter Markuski does not allege that Claim No. 4-2 is secured so there is no determination to be made with respect to that claim.  Thus, Count One must be dismissed.[6]  Similarly, this court has also already determined that the attorney's fees awarded to Peter Markuski as the best interest attorney in Michael McNeil's divorce case, as stated in both Claim Nos. 3 and 4, are domestic support obligations entitled to treatment as priority claims.  Thus, Count Two must be dismissed.  This is

---

[6] The court is aware that Michael McNeil also asserts in Count One that Peter Markuski and his attorney, Jeffrey W. Bernstein, should be sanctioned for filing false claims.  Those contentions were previously considered and rejected by this court.  See, Order Denying Motion for Sanctions entered January 24, 2013 [Main Case Docket No. 245].

~ 7 ~

App. 29

Case 1:13-cv-02569-WDQ   Document 8-1   Filed 10/07/13   Page 31 of 81
Case 12-00829   Doc 16   Filed 07/30/13   Page 8 of 9
Case 1:13-cv-02569-WDQ   Document 1-1   Filed 09/05/13   Page 8 of 9

so not merely because this court denied confirmation of Michael McNeil's various plans because they failed to provide for payment of his secured and domestic support obligations to Peter Markuski and others, but also because the claims were determined to be a domestic support obligation when this court overruled Michael McNeil's objections to Peter Markuski's claims.

The doctrines of res judicata and collateral estoppel preclude Michael McNeil from litigating in this adversary proceeding for a second time matters already decided by the bankruptcy court in earlier proceedings. First Union Commercial Corp. v. Nelson, Mullins, Riley and Scarborough (In re Varat Enterprises, Inc.), 81 F.3d 1310, 1314-1315 (4th Cir. 1996) (debtor was barred by res judicata from objecting to a claim after confirmation of debtor's plan); Federal Deposit Ins. Corp. v. Jones, 846 F.2d 221, 234-35 (4th Cir. 1988). See also United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260 (2010) (finding that a plan confirmation order is res judicata as to the dischargeability of student loans).

The only issue raised in this adversary proceeding that has not already been decided is whether the fees that are the basis for Peter Markuski's claims are dischargeable. It follows as a matter of law from the court's prior determination that Peter Markuski's fees are domestic support obligations entitled to treatment as priority claims that those fees are not dischargeable, and are domestic support obligations excepted under § 523(a)(5) of the Bankruptcy Code from the effect of the discharge granted to Michael McNeil.[7]  Thus, Count Three must also be dismissed.

Finally, there is no merit to Michael McNeil's contention that the motion to dismiss must be denied because these issues should have been decided in an adversary proceeding after he was afforded an opportunity to take discovery. The determination that is decisive here is the prior

---

[7] Michael McNeil was granted a Chapter 7 discharge on May 3, 2013 [Main Case Docket No. 292].

Appx. 30

Case 1:13-cv-02569-WDQ   Document 8-1   Filed 10/07/13   Page 32 of 81
Case 12-00829   Doc 16   Filed 07/30/13   Page 9 of 9
Case 1:13-cv-02569-WDQ   Document 1-1   Filed 09/05/13   Page 9 of 9

ruling that Peter Markuski's claims are domestic support obligations entitled to treatment as priority claims. That decision was the result of litigation commenced by Michael McNeil's objections to Peter Markuski's claims. A claim objection proceeding is a contested matter under Rule 9014 of the Federal Rules of Bankruptcy Procedure in which the rules permitting discovery are applicable. Gentry v. Siegel, 668 F.3d 83, 92 (4th Cir. 2012). As pointed out by Peter Markuski, the requirement that the dischargeablity of a claim be determined in an adversary proceeding is intended to provide procedural due process protections to the defendant in the adversary proceeding. Petroff v. United States (In re Petroff), 2006 Bankr. LEXIS 2338, *3 (Bankr. D. Md. 2006) (citing Hamlet v. Ocwen Fed. Bank, FSB, 286 B.R. 835, 838 (Bankr. W.D. Va. 2002)). In any event, nothing precludes application of the doctrines of res judicata or collateral estoppel at this stage in this adversary proceeding with respect to matters already litigated between these parties in the main bankruptcy case.

For the above reasons, I conclude that the Complaint fails to state a claim upon which relief can be granted and must be dismissed.

**NOW, THEREFORE**, it is, by the United States Bankruptcy Court for the District of Maryland, sitting at Baltimore,

**ORDERED**, that the Complaint and this adversary proceeding should be, and hereby are, **DISMISSED.**

cc:   Plaintiff – Michael A. McNeil
      Defendant's Counsel – Jeffrey W. Bernstein, Esq.
      Chapter 7 Trustee – Brian A. Goldman
      Assistant U.S. Trustee – Mark A. Neal, Esq.

-- END OF ORDER --
~9~

App. 31

**(Text of Statutes and Rules)**

United States Code Annotated
   Title 11. Bankruptcy (Refs & Annos)
      Chapter 1. General Provisions (Refs & Annos)

11 U.S.C.A. § 101

§ 101. Definitions

Effective: December 22, 2010
Currentness

In this title the following definitions shall apply:

**(1)** The term "accountant" means accountant authorized under applicable law to practice public accounting, and includes professional accounting association, corporation, or partnership, if so authorized.

**(2)** The term "affiliate" means--

   **(A)** entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities--

      **(i)** in a fiduciary or agency capacity without sole discretionary power to vote such securities; or

      **(ii)** solely to secure a debt, if such entity has not in fact exercised such power to vote;

   **(B)** corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities--

      **(i)** in a fiduciary or agency capacity without sole discretionary power to vote such securities; or

      **(ii)** solely to secure a debt, if such entity has not in fact exercised such power to vote;

   **(C)** person whose business is operated under a lease or operating agreement by a debtor, or person substantially all of whose property is operated under an operating agreement with the debtor; or

   **(D)** entity that operates the business or substantially all of the property of the debtor under a lease or operating agreement.

**(3)** The term "assisted person" means any person whose debts consist primarily of consumer debts and the value of whose nonexempt property is less than $186,825 [1].

**(4)** The term "attorney" means attorney, professional law association, corporation, or partnership, authorized under applicable law to practice law.

**(4A)** The term "bankruptcy assistance" means any goods or services sold or otherwise provided to an assisted person with the express or implied purpose of providing information, advice, counsel, document preparation, or filing, or attendance at a creditors' meeting or appearing in a case or proceeding on behalf of another or providing legal representation with respect to a case or proceeding under this title.

**(5)** The term "claim" means--

    **(A)** right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

    **(B)** right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**(6)** The term "commodity broker" means futures commission merchant, foreign futures commission merchant, clearing organization, leverage transaction merchant, or commodity options dealer, as defined in section 761 of this title, with respect to which there is a customer, as defined in section 761 of this title.

**(7)** The term "community claim" means claim that arose before the commencement of the case concerning the debtor for which property of the kind specified in section 541(a)(2) of this title is liable, whether or not there is any such property at the time of the commencement of the case.

**(7A)** The term "commercial fishing operation" means--

    **(A)** the catching or harvesting of fish, shrimp, lobsters, urchins, seaweed, shellfish, or other aquatic species or products of such species; or

    **(B)** for purposes of section 109 and chapter 12, aquaculture activities consisting of raising for market any species or product described in subparagraph (A).

**(7B)** The term "commercial fishing vessel" means a vessel used by a family fisherman to carry out a commercial fishing operation.

**(8)** The term "consumer debt" means debt incurred by an individual primarily for a personal, family, or household purpose.

**(9)** The term "corporation"--

(A) includes--

(i) association having a power or privilege that a private corporation, but not an individual or a partnership, possesses;

(ii) partnership association organized under a law that makes only the capital subscribed responsible for the debts of such association;

(iii) joint-stock company;

(iv) unincorporated company or association; or

(v) business trust; but

(B) does not include limited partnership.

(10) The term "creditor" means--

(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;

(B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title; or

(C) entity that has a community claim.

(10A) The term "current monthly income"--

(A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on--

(i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or

(ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and

(B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's

spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.

**(11)** The term "custodian" means--

**(A)** receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title;

**(B)** assignee under a general assignment for the benefit of the debtor's creditors; or

**(C)** trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors.

**(12)** The term "debt" means liability on a claim.

**(12A)** The term "debt relief agency" means any person who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration, or who is a bankruptcy petition preparer under section 110, but does not include--

**(A)** any person who is an officer, director, employee, or agent of a person who provides such assistance or of the bankruptcy petition preparer;

**(B)** a nonprofit organization that is exempt from taxation under section 501(c)(3) of the Internal Revenue Code of 1986;

**(C)** a creditor of such assisted person, to the extent that the creditor is assisting such assisted person to restructure any debt owed by such assisted person to the creditor;

**(D)** a depository institution (as defined in section 3 of the Federal Deposit Insurance Act) or any Federal credit union or State credit union (as those terms are defined in section 101 of the Federal Credit Union Act), or any affiliate or subsidiary of such depository institution or credit union; or

**(E)** an author, publisher, distributor, or seller of works subject to copyright protection under title 17, when acting in such capacity.

**(13)** The term "debtor" means person or municipality concerning which a case under this title has been commenced.

**(13A)** The term "debtor's principal residence"--

**(A)** means a residential structure if used as the principal residence by the debtor, including incidental property, without regard to whether that structure is attached to real property; and

**(B)** includes an individual condominium or cooperative unit, a mobile or manufactured home, or trailer if used as the principal residence by the debtor.

**(14)** The term "disinterested person" means a person that--

**(A)** is not a creditor, an equity security holder, or an insider;

**(B)** is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

**(C)** does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

**(14A)** The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is--

**(A)** owed to or recoverable by--

**(i)** a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or

**(ii)** a governmental unit;

**(B)** in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

**(C)** established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of--

**(i)** a separation agreement, divorce decree, or property settlement agreement;

**(ii)** an order of a court of record; or

**(iii)** a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

**(D)** not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

**(15)** The term "entity" includes person, estate, trust, governmental unit, and United States trustee.

**(16)** The term "equity security" means--

    **(A)** share in a corporation, whether or not transferable or denominated "stock", or similar security;

    **(B)** interest of a limited partner in a limited partnership; or

    **(C)** warrant or right, other than a right to convert, to purchase, sell, or subscribe to a share, security, or interest of a kind specified in subparagraph (A) or (B) of this paragraph.

**(17)** The term "equity security holder" means holder of an equity security of the debtor.

**(18)** The term "family farmer" means--

    **(A)** individual or individual and spouse engaged in a farming operation whose aggregate debts do not exceed $4,031,575 [1] and not less than 50 percent of whose aggregate noncontingent, liquidated debts (excluding a debt for the principal residence of such individual or such individual and spouse unless such debt arises out of a farming operation), on the date the case is filed, arise out of a farming operation owned or operated by such individual or such individual and spouse, and such individual or such individual and spouse receive from such farming operation more than 50 percent of such individual's or such individual and spouse's gross income for--

        **(i)** the taxable year preceding; or

        **(ii)** each of the 2d and 3d taxable years preceding;

        the taxable year in which the case concerning such individual or such individual and spouse was filed; or

    **(B)** corporation or partnership in which more than 50 percent of the outstanding stock or equity is held by one family, or by one family and the relatives of the members of such family, and such family or such relatives conduct the farming operation, and

        **(i)** more than 80 percent of the value of its assets consists of assets related to the farming operation;

(ii) its aggregate debts do not exceed $4,031,575 [1] and not less than 50 percent of its aggregate noncontingent, liquidated debts (excluding a debt for one dwelling which is owned by such corporation or partnership and which a shareholder or partner maintains as a principal residence, unless such debt arises out of a farming operation), on the date the case is filed, arise out of the farming operation owned or operated by such corporation or such partnership; and

(iii) if such corporation issues stock, such stock is not publicly traded.

(19) The term "family farmer with regular annual income" means family farmer whose annual income is sufficiently stable and regular to enable such family farmer to make payments under a plan under chapter 12 of this title.

(19A) The term "family fisherman" means--

(A) an individual or individual and spouse engaged in a commercial fishing operation--

(i) whose aggregate debts do not exceed $1,868,200 [1] and not less than 80 percent of whose aggregate noncontingent, liquidated debts (excluding a debt for the principal residence of such individual or such individual and spouse, unless such debt arises out of a commercial fishing operation), on the date the case is filed, arise out of a commercial fishing operation owned or operated by such individual or such individual and spouse; and

(ii) who receive from such commercial fishing operation more than 50 percent of such individual's or such individual's and spouse's gross income for the taxable year preceding the taxable year in which the case concerning such individual or such individual and spouse was filed; or

(B) a corporation or partnership--

(i) in which more than 50 percent of the outstanding stock or equity is held by--

(I) 1 family that conducts the commercial fishing operation; or

(II) 1 family and the relatives of the members of such family, and such family or such relatives conduct the commercial fishing operation; and

(ii)(I) more than 80 percent of the value of its assets consists of assets related to the commercial fishing operation;

(II) its aggregate debts do not exceed $1,868,200 [1] and not less than 80 percent of its aggregate noncontingent, liquidated debts (excluding a debt for 1 dwelling which is owned by such corporation or partnership and which a shareholder or partner maintains as a principal residence, unless such debt arises out of a commercial fishing operation), on the date the case is filed, arise out of a commercial fishing operation owned or operated by such corporation or such partnership; and

(III) if such corporation issues stock, such stock is not publicly traded.

(19B) The term "family fisherman with regular annual income" means a family fisherman whose annual income is sufficiently stable and regular to enable such family fisherman to make payments under a plan under chapter 12 of this title.

(20) The term "farmer" means (except when such term appears in the term "family farmer") person that received more than 80 percent of such person's gross income during the taxable year of such person immediately preceding the taxable year of such person during which the case under this title concerning such person was commenced from a farming operation owned or operated by such person.

(21) The term "farming operation" includes farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry, or livestock, and production of poultry or livestock products in an unmanufactured state.

(21A) The term "farmout agreement" means a written agreement in which--

(A) the owner of a right to drill, produce, or operate liquid or gaseous hydrocarbons on property agrees or has agreed to transfer or assign all or a part of such right to another entity; and

(B) such other entity (either directly or through its agents or its assigns), as consideration, agrees to perform drilling, reworking, recompleting, testing, or similar or related operations, to develop or produce liquid or gaseous hydrocarbons on the property.

(21B) The term "Federal depository institutions regulatory agency" means--

(A) with respect to an insured depository institution (as defined in section 3(c)(2) of the Federal Deposit Insurance Act) for which no conservator or receiver has been appointed, the appropriate Federal banking agency (as defined in section 3(q) of such Act);

(B) with respect to an insured credit union (including an insured credit union for which the National Credit Union Administration has been appointed conservator or liquidating agent), the National Credit Union Administration;

(C) with respect to any insured depository institution for which the Resolution Trust Corporation has been appointed conservator or receiver, the Resolution Trust Corporation; and

(D) with respect to any insured depository institution for which the Federal Deposit Insurance Corporation has been appointed conservator or receiver, the Federal Deposit Insurance Corporation.

(22) The term "financial institution" means--

(A) a Federal reserve bank, or an entity that is a commercial or savings bank, industrial savings bank, savings and loan association, trust company, federally-insured credit union, or receiver, liquidating agent, or conservator for such entity and, when any such Federal reserve bank, receiver, liquidating agent, conservator or entity is acting as agent or custodian for a customer (whether or not a "customer", as defined in section 741) in connection with a securities contract (as defined in section 741) such customer; or

(B) in connection with a securities contract (as defined in section 741) an investment company registered under the Investment Company Act of 1940.

(22A) The term "financial participant" means--

(A) an entity that, at the time it enters into a securities contract, commodity contract, swap agreement, repurchase agreement, or forward contract, or at the time of the date of the filing of the petition, has one or more agreements or transactions described in paragraph (1), (2), (3), (4), (5), or (6) of section 561(a) with the debtor or any other entity (other than an affiliate) of a total gross dollar value of not less than $1,000,000,000 in notional or actual principal amount outstanding (aggregated across counterparties) at such time or on any day during the 15-month period preceding the date of the filing of the petition, or has gross mark-to-market positions of not less than $100,000,000 (aggregated across counterparties) in one or more such agreements or transactions with the debtor or any other entity (other than an affiliate) at such time or on any day during the 15-month period preceding the date of the filing of the petition; or

(B) a clearing organization (as defined in section 402 of the Federal Deposit Insurance Corporation Improvement Act of 1991).

(23) The term "foreign proceeding" means a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

(24) The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

(25) The term "forward contract" means--

(A) a contract (other than a commodity contract, as defined in section 761) for the purchase, sale, or transfer of a commodity, as defined in section 761(8) of this title, or any similar good, article, service, right, or interest which is presently or in the future becomes the subject of dealing in the forward contract trade, or product or byproduct thereof, with a maturity date more than two days after the date the contract is entered into, including, but not limited to, a repurchase or reverse repurchase transaction (whether or not such repurchase or reverse repurchase transaction is a "repurchase agreement", as defined in this section) [2] consignment, lease, swap, hedge transaction, deposit, loan, option, allocated transaction, unallocated transaction, or any other similar agreement;

(B) any combination of agreements or transactions referred to in subparagraphs (A) and (C);

(C) any option to enter into an agreement or transaction referred to in subparagraph (A) or (B);

(D) a master agreement that provides for an agreement or transaction referred to in subparagraph (A), (B), or (C), together with all supplements to any such master agreement, without regard to whether such master agreement provides for an agreement or transaction that is not a forward contract under this paragraph, except that such master agreement shall be considered to be a forward contract under this paragraph only with respect to each agreement or transaction under such master agreement that is referred to in subparagraph (A), (B), or (C); or

(E) any security agreement or arrangement, or other credit enhancement related to any agreement or transaction referred to in subparagraph (A), (B), (C), or (D), including any guarantee or reimbursement obligation by or to a forward contract merchant or financial participant in connection with any agreement or transaction referred to in any such subparagraph, but not to exceed the damages in connection with any such agreement or transaction, measured in accordance with section 562.

(26) The term "forward contract merchant" means a Federal reserve bank, or an entity the business of which consists in whole or in part of entering into forward contracts as or with merchants in a commodity (as defined in section 761) or any similar good, article, service, right, or interest which is presently or in the future becomes the subject of dealing in the forward contract trade.

(27) The term "governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

(27A) The term "health care business"--

(A) means any public or private entity (without regard to whether that entity is organized for profit or not for profit) that is primarily engaged in offering to the general public facilities and services for--

(i) the diagnosis or treatment of injury, deformity, or disease; and

(ii) surgical, drug treatment, psychiatric, or obstetric care; and

(B) includes--

(i) any--

(I) general or specialized hospital;

(II) ancillary ambulatory, emergency, or surgical treatment facility;

**(III)** hospice;

**(IV)** home health agency; and

**(V)** other health care institution that is similar to an entity referred to in subclause (I), (II), (III), or (IV); and

**(ii)** any long-term care facility, including any--

**(I)** skilled nursing facility;

**(II)** intermediate care facility;

**(III)** assisted living facility;

**(IV)** home for the aged;

**(V)** domiciliary care facility; and

**(VI)** health care institution that is related to a facility referred to in subclause (I), (II), (III), (IV), or (V), if that institution is primarily engaged in offering room, board, laundry, or personal assistance with activities of daily living and incidentals to activities of daily living.

**(27B)** The term "incidental property" means, with respect to a debtor's principal residence--

**(A)** property commonly conveyed with a principal residence in the area where the real property is located;

**(B)** all easements, rights, appurtenances, fixtures, rents, royalties, mineral rights, oil or gas rights or profits, water rights, escrow funds, or insurance proceeds; and

**(C)** all replacements or additions.

**(28)** The term "indenture" means mortgage, deed of trust, or indenture, under which there is outstanding a security, other than a voting-trust certificate, constituting a claim against the debtor, a claim secured by a lien on any of the debtor's property, or an equity security of the debtor.

**(29)** The term "indenture trustee" means trustee under an indenture.

**(30)** The term "individual with regular income" means individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title, other than a stockbroker or a commodity broker.

**(31)** The term "insider" includes--

  **(A)** if the debtor is an individual--

    **(i)** relative of the debtor or of a general partner of the debtor;

    **(ii)** partnership in which the debtor is a general partner;

    **(iii)** general partner of the debtor; or

    **(iv)** corporation of which the debtor is a director, officer, or person in control;

  **(B)** if the debtor is a corporation--

    **(i)** director of the debtor;

    **(ii)** officer of the debtor;

    **(iii)** person in control of the debtor;

    **(iv)** partnership in which the debtor is a general partner;

    **(v)** general partner of the debtor; or

    **(vi)** relative of a general partner, director, officer, or person in control of the debtor;

  **(C)** if the debtor is a partnership--

    **(i)** general partner in the debtor;

    **(ii)** relative of a general partner in, general partner of, or person in control of the debtor;

    **(iii)** partnership in which the debtor is a general partner;

**(iv)** general partner of the debtor; or

**(v)** person in control of the debtor;

**(D)** if the debtor is a municipality, elected official of the debtor or relative of an elected official of the debtor;

**(E)** affiliate, or insider of an affiliate as if such affiliate were the debtor; and

**(F)** managing agent of the debtor.

**(32)** The term "insolvent" means--

**(A)** with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of--

**(i)** property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and

**(ii)** property that may be exempted from property of the estate under section 522 of this title;

**(B)** with reference to a partnership, financial condition such that the sum of such partnership's debts is greater than the aggregate of, at a fair valuation--

**(i)** all of such partnership's property, exclusive of property of the kind specified in subparagraph (A)(i) of this paragraph; and

**(ii)** the sum of the excess of the value of each general partner's nonpartnership property, exclusive of property of the kind specified in subparagraph (A) of this paragraph, over such partner's nonpartnership debts; and

**(C)** with reference to a municipality, financial condition such that the municipality is--

**(i)** generally not paying its debts as they become due unless such debts are the subject of a bona fide dispute; or

**(ii)** unable to pay its debts as they become due.

**(33)** The term "institution-affiliated party"--

**(A)** with respect to an insured depository institution (as defined in section 3(c)(2) of the Federal Deposit Insurance Act), has the meaning given it in section 3(u) of the Federal Deposit Insurance Act; and

**(B)** with respect to an insured credit union, has the meaning given it in section 206(r) of the Federal Credit Union Act.

**(34)** The term "insured credit union" has the meaning given it in section 101(7) of the Federal Credit Union Act.

**(35)** The term "insured depository institution"--

**(A)** has the meaning given it in section 3(c)(2) of the Federal Deposit Insurance Act; and

**(B)** includes an insured credit union (except in the case of paragraphs (21B) and (33)(A) of this subsection).

**(35A)** The term "intellectual property" means--

**(A)** trade secret;

**(B)** invention, process, design, or plant protected under title 35;

**(C)** patent application;

**(D)** plant variety;

**(E)** work of authorship protected under title 17; or

**(F)** mask work protected under chapter 9 of title 17;

to the extent protected by applicable nonbankruptcy law.

**(36)** The term "judicial lien" means lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding.

**(37)** The term "lien" means charge against or interest in property to secure payment of a debt or performance of an obligation.

**(38)** The term "margin payment" means, for purposes of the forward contract provisions of this title, payment or deposit of cash, a security or other property, that is commonly known in the forward contract trade as original margin, initial margin, maintenance margin, or variation margin, including mark-to-market payments, or variation payments.

§ 101. Definitions, 11 USCA § 101

**(38A)** The term "master netting agreement"--

**(A)** means an agreement providing for the exercise of rights, including rights of netting, setoff, liquidation, termination, acceleration, or close out, under or in connection with one or more contracts that are described in any one or more of paragraphs (1) through (5) of section 561(a), or any security agreement or arrangement or other credit enhancement related to one or more of the foregoing, including any guarantee or reimbursement obligation related to 1 or more of the foregoing; and

**(B)** if the agreement contains provisions relating to agreements or transactions that are not contracts described in paragraphs (1) through (5) of section 561(a), shall be deemed to be a master netting agreement only with respect to those agreements or transactions that are described in any one or more of paragraphs (1) through (5) of section 561(a).

**(38B)** The term "master netting agreement participant" means an entity that, at any time before the date of the filing of the petition, is a party to an outstanding master netting agreement with the debtor.

**(39)** The term "mask work" has the meaning given it in section 901(a)(2) of title 17.

**(39A)** The term "median family income" means for any year--

**(A)** the median family income both calculated and reported by the Bureau of the Census in the then most recent year; and

**(B)** if not so calculated and reported in the then current year, adjusted annually after such most recent year until the next year in which median family income is both calculated and reported by the Bureau of the Census, to reflect the percentage change in the Consumer Price Index for All Urban Consumers during the period of years occurring after such most recent year and before such current year.

**(40)** The term "municipality" means political subdivision or public agency or instrumentality of a State.

**(40A)** The term "patient" means any individual who obtains or receives services from a health care business.

**(40B)** The term "patient records" means any record relating to a patient, including a written document or a record recorded in a magnetic, optical, or other form of electronic medium.

**(41)** The term "person" includes individual, partnership, and corporation, but does not include governmental unit, except that a governmental unit that--

**(A)** acquires an asset from a person--

**(i)** as a result of the operation of a loan guarantee agreement; or

(ii) as receiver or liquidating agent of a person;

(B) is a guarantor of a pension benefit payable by or on behalf of the debtor or an affiliate of the debtor; or

(C) is the legal or beneficial owner of an asset of--

(i) an employee pension benefit plan that is a governmental plan, as defined in section 414(d) of the Internal Revenue Code of 1986; or

(ii) an eligible deferred compensation plan, as defined in section 457(b) of the Internal Revenue Code of 1986;

shall be considered, for purposes of section 1102 of this title, to be a person with respect to such asset or such benefit.

(41A) The term "personally identifiable information" means--

(A) if provided by an individual to the debtor in connection with obtaining a product or a service from the debtor primarily for personal, family, or household purposes--

(i) the first name (or initial) and last name of such individual, whether given at birth or time of adoption, or resulting from a lawful change of name;

(ii) the geographical address of a physical place of residence of such individual;

(iii) an electronic address (including an e-mail address) of such individual;

(iv) a telephone number dedicated to contacting such individual at such physical place of residence;

(v) a social security account number issued to such individual; or

(vi) the account number of a credit card issued to such individual; or

(B) if identified in connection with 1 or more of the items of information specified in subparagraph (A)--

(i) a birth date, the number of a certificate of birth or adoption, or a place of birth; or

(ii) any other information concerning an identified individual that, if disclosed, will result in contacting or identifying such individual physically or electronically.

§ 101. Definitions, 11 USCA § 101

**(42)** The term "petition" means petition filed under section 301, 302, 303 and [3] 1504 of this title, as the case may be, commencing a case under this title.

**(42A)** The term "production payment" means a term overriding royalty satisfiable in cash or in kind--

   **(A)** contingent on the production of a liquid or gaseous hydrocarbon from particular real property; and

   **(B)** from a specified volume, or a specified value, from the liquid or gaseous hydrocarbon produced from such property, and determined without regard to production costs.

**(43)** The term "purchaser" means transferee of a voluntary transfer, and includes immediate or mediate transferee of such a transferee.

**(44)** The term "railroad" means common carrier by railroad engaged in the transportation of individuals or property or owner of trackage facilities leased by such a common carrier.

**(45)** The term "relative" means individual related by affinity or consanguinity within the third degree as determined by the common law, or individual in a step or adoptive relationship within such third degree.

**(46)** The term "repo participant" means an entity that, at any time before the filing of the petition, has an outstanding repurchase agreement with the debtor.

**(47)** The term "repurchase agreement" (which definition also applies to a reverse repurchase agreement)--

   **(A)** means--

      **(i)** an agreement, including related terms, which provides for the transfer of one or more certificates of deposit, mortgage related securities (as defined in section 3 of the Securities Exchange Act of 1934), mortgage loans, interests in mortgage related securities or mortgage loans, eligible bankers' acceptances, qualified foreign government securities (defined as a security that is a direct obligation of, or that is fully guaranteed by, the central government of a member of the Organization for Economic Cooperation and Development), or securities that are direct obligations of, or that are fully guaranteed by, the United States or any agency of the United States against the transfer of funds by the transferee of such certificates of deposit, eligible bankers' acceptances, securities, mortgage loans, or interests, with a simultaneous agreement by such transferee to transfer to the transferor thereof certificates of deposit, eligible bankers' acceptance, securities, mortgage loans, or interests of the kind described in this clause, at a date certain not later than 1 year after such transfer or on demand, against the transfer of funds;

      **(ii)** any combination of agreements or transactions referred to in clauses (i) and (iii);

**(iii)** an option to enter into an agreement or transaction referred to in clause (i) or (ii);

**(iv)** a master agreement that provides for an agreement or transaction referred to in clause (i), (ii), or (iii), together with all supplements to any such master agreement, without regard to whether such master agreement provides for an agreement or transaction that is not a repurchase agreement under this paragraph, except that such master agreement shall be considered to be a repurchase agreement under this paragraph only with respect to each agreement or transaction under the master agreement that is referred to in clause (i), (ii), or (iii); or

**(v)** any security agreement or arrangement or other credit enhancement related to any agreement or transaction referred to in clause (i), (ii), (iii), or (iv), including any guarantee or reimbursement obligation by or to a repo participant or financial participant in connection with any agreement or transaction referred to in any such clause, but not to exceed the damages in connection with any such agreement or transaction, measured in accordance with section 562 of this title; and

**(B)** does not include a repurchase obligation under a participation in a commercial mortgage loan.

**(48)** The term "securities clearing agency" means person that is registered as a clearing agency under section 17A of the Securities Exchange Act of 1934, or exempt from such registration under such section pursuant to an order of the Securities and Exchange Commission, or whose business is confined to the performance of functions of a clearing agency with respect to exempted securities, as defined in section 3(a)(12) of such Act for the purposes of such section 17A.

**(48A)** The term "securities self regulatory organization" means either a securities association registered with the Securities and Exchange Commission under section 15A of the Securities Exchange Act of 1934 or a national securities exchange registered with the Securities and Exchange Commission under section 6 of the Securities Exchange Act of 1934.

**(49)** The term "security"--

**(A)** includes--

**(i)** note;

**(ii)** stock;

**(iii)** treasury stock;

**(iv)** bond;

**(v)** debenture;

**(vi)** collateral trust certificate;

**(vii)** pre-organization certificate or subscription;

**(viii)** transferable share;

**(ix)** voting-trust certificate;

**(x)** certificate of deposit;

**(xi)** certificate of deposit for security;

**(xii)** investment contract or certificate of interest or participation in a profit-sharing agreement or in an oil, gas, or mineral royalty or lease, if such contract or interest is required to be the subject of a registration statement filed with the Securities and Exchange Commission under the provisions of the Securities Act of 1933, or is exempt under section 3(b) of such Act from the requirement to file such a statement;

**(xiii)** interest of a limited partner in a limited partnership;

**(xiv)** other claim or interest commonly known as "security"; and

**(xv)** certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase or sell, a security; but

**(B)** does not include--

**(i)** currency, check, draft, bill of exchange, or bank letter of credit;

**(ii)** leverage transaction, as defined in section 761 of this title;

**(iii)** commodity futures contract or forward contract;

**(iv)** option, warrant, or right to subscribe to or purchase or sell a commodity futures contract;

**(v)** option to purchase or sell a commodity;

**(vi)** contract or certificate of a kind specified in subparagraph (A)(xii) of this paragraph that is not required to be the subject of a registration statement filed with the Securities and Exchange Commission and is not exempt under section 3(b) of the Securities Act of 1933 from the requirement to file such a statement; or

**(vii)** debt or evidence of indebtedness for goods sold and delivered or services rendered.

**(50)** The term "security agreement" means agreement that creates or provides for a security interest.

**(51)** The term "security interest" means lien created by an agreement.

**(51A)** The term "settlement payment" means, for purposes of the forward contract provisions of this title, a preliminary settlement payment, a partial settlement payment, an interim settlement payment, a settlement payment on account, a final settlement payment, a net settlement payment, or any other similar payment commonly used in the forward contract trade.

**(51B)** The term "single asset real estate" means real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto.

**(51C)** The term "small business case" means a case filed under chapter 11 of this title in which the debtor is a small business debtor.

**(51D)** The term "small business debtor"--

**(A)** subject to subparagraph (B), means a person engaged in commercial or business activities (including any affiliate of such person that is also a debtor under this title and excluding a person whose primary activity is the business of owning or operating real property or activities incidental thereto) that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition or the date of the order for relief in an amount not more than $2,490,925 [1] (excluding debts owed to 1 or more affiliates or insiders) for a case in which the United States trustee has not appointed under section 1102(a)(1) a committee of unsecured creditors or where the court has determined that the committee of unsecured creditors is not sufficiently active and representative to provide effective oversight of the debtor; and

**(B)** does not include any member of a group of affiliated debtors that has aggregate noncontingent liquidated secured and unsecured debts in an amount greater than $2,490,925 [1] (excluding debt owed to 1 or more affiliates or insiders).

**(52)** The term "State" includes the District of Columbia and Puerto Rico, except for the purpose of defining who may be a debtor under chapter 9 of this title.

**(53)** The term "statutory lien" means lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute.

**(53A)** The term "stockbroker" means person--

**(A)** with respect to which there is a customer, as defined in section 741 of this title; and

**(B)** that is engaged in the business of effecting transactions in securities--

**(i)** for the account of others; or

**(ii)** with members of the general public, from or for such person's own account.

**(53B)** The term "swap agreement"--

**(A)** means--

**(i)** any agreement, including the terms and conditions incorporated by reference in such agreement, which is--

**(I)** an interest rate swap, option, future, or forward agreement, including a rate floor, rate cap, rate collar, cross-currency rate swap, and basis swap;

**(II)** a spot, same day-tomorrow, tomorrow-next, forward, or other foreign exchange, precious metals, or other commodity agreement;

**(III)** a currency swap, option, future, or forward agreement;

**(IV)** an equity index or equity swap, option, future, or forward agreement;

**(V)** a debt index or debt swap, option, future, or forward agreement;

**(VI)** a total return, credit spread or credit swap, option, future, or forward agreement;

**(VII)** a commodity index or a commodity swap, option, future, or forward agreement;

**(VIII)** a weather swap, option, future, or forward agreement;

**(IX)** an emissions swap, option, future, or forward agreement; or

**(X)** an inflation swap, option, future, or forward agreement;

(ii) any agreement or transaction that is similar to any other agreement or transaction referred to in this paragraph and that--

(I) is of a type that has been, is presently, or in the future becomes, the subject of recurrent dealings in the swap or other derivatives markets (including terms and conditions incorporated by reference therein); and

(II) is a forward, swap, future, option, or spot transaction on one or more rates, currencies, commodities, equity securities, or other equity instruments, debt securities or other debt instruments, quantitative measures associated with an occurrence, extent of an occurrence, or contingency associated with a financial, commercial, or economic consequence, or economic or financial indices or measures of economic or financial risk or value;

(iii) any combination of agreements or transactions referred to in this subparagraph;

(iv) any option to enter into an agreement or transaction referred to in this subparagraph;

(v) a master agreement that provides for an agreement or transaction referred to in clause (i), (ii), (iii), or (iv), together with all supplements to any such master agreement, and without regard to whether the master agreement contains an agreement or transaction that is not a swap agreement under this paragraph, except that the master agreement shall be considered to be a swap agreement under this paragraph only with respect to each agreement or transaction under the master agreement that is referred to in clause (i), (ii), (iii), or (iv); or

(vi) any security agreement or arrangement or other credit enhancement related to any agreements or transactions referred to in clause (i) through (v), including any guarantee or reimbursement obligation by or to a swap participant or financial participant in connection with any agreement or transaction referred to in any such clause, but not to exceed the damages in connection with any such agreement or transaction, measured in accordance with section 562; and

(B) is applicable for purposes of this title only, and shall not be construed or applied so as to challenge or affect the characterization, definition, or treatment of any swap agreement under any other statute, regulation, or rule, including the Gramm-Leach-Bliley Act, the Legal Certainty for Bank Products Act of 2000, the securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934) and the Commodity Exchange Act.

(53C) The term "swap participant" means an entity that, at any time before the filing of the petition, has an outstanding swap agreement with the debtor.

(56A) [4] The term "term overriding royalty" means an interest in liquid or gaseous hydrocarbons in place or to be produced from particular real property that entitles the owner thereof to a share of production, or the value thereof, for a term limited by time, quantity, or value realized.

(53D) The term "timeshare plan" means and shall include that interest purchased in any arrangement, plan, scheme, or similar device, but not including exchange programs, whether by membership, agreement, tenancy in common, sale, lease, deed, rental agreement, license, right to use agreement, or by any other means, whereby a purchaser, in exchange for consideration,

§ 101. Definitions, 11 USCA § 101

receives a right to use accommodations, facilities, or recreational sites, whether improved or unimproved, for a specific period of time less than a full year during any given year, but not necessarily for consecutive years, and which extends for a period of more than three years. A "timeshare interest" is that interest purchased in a timeshare plan which grants the purchaser the right to use and occupy accommodations, facilities, or recreational sites, whether improved or unimproved, pursuant to a timeshare plan.

**(54)** The term "transfer" means--

   **(A)** the creation of a lien;

   **(B)** the retention of title as a security interest;

   **(C)** the foreclosure of a debtor's equity of redemption; or

   **(D)** each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with--

      **(i)** property; or

      **(ii)** an interest in property.

**(54A)** The term "uninsured State member bank" means a State member bank (as defined in section 3 of the Federal Deposit Insurance Act) the deposits of which are not insured by the Federal Deposit Insurance Corporation.

**(55)** The term "United States", when used in a geographical sense, includes all locations where the judicial jurisdiction of the United States extends, including territories and possessions of the United States.

**CREDIT(S)**

(Pub.L. 95-598, Nov. 6, 1978, 92 Stat. 2549; Pub.L. 97-222, § 1, July 27, 1982, 96 Stat. 235; Pub.L. 98-353, Title III, §§ 391, 401, 421, July 10, 1984, 98 Stat. 364, 366, 367; Pub.L. 99-554, Title II, §§ 201, 251, 283(a), Oct. 27, 1986, 100 Stat. 3097, 3104, 3116; Pub.L. 100-506, § 1(a), Oct. 18, 1988, 102 Stat. 2538; Pub.L. 100-597, § 1, Nov. 3, 1988, 102 Stat. 3028; Pub.L. 101-311, Title I, § 101, Title II, § 201, June 25, 1990, 104 Stat. 267, 268; Pub.L. 101-647, Title XXV, § 2522(e), Nov. 29, 1990, 104 Stat. 4867; Pub.L. 102-486, Title XXX, § 3017(a), Oct. 24, 1992, 106 Stat. 3130; Pub.L. 103-394, Title I, § 106, Title II, §§ 208(a), 215, 217(a), 218(a), Title III, § 304(a), Title V, § 501(a), (b)(1), (d)(1), Oct. 22, 1994, 108 Stat. 4111, 4124, 4126-4128, 4132, 4141-4143; Pub.L. 106-554, § 1(a)(5) [Title I, § 112(c)(3), (4)], Dec. 21, 2000, 114 Stat. 2763, 2763A-393; Pub.L. 109-8, Title I, § 102(b), (k), Title II, §§ 211, 226(a), 231(b), Title III, § 306(c), Title IV, §§ 401(a), 414, 432(a), Title VIII, § 802(b), Title IX, § 907(a)(1), (b), (c), Title X, §§ 1004, 1005, 1007(a), Title XI, § 1101(a), (b), Title XII, § 1201, Apr. 20, 2005, 119 Stat. 32, 35, 50, 66, 73, 80, 104, 107, 110, 145, 170, 175, 186, 187, 189, 192; Pub.L. 109-390, § 5(a)(1), Dec. 12, 2006, 120 Stat. 2695; Pub.L. 111-327, § 2(a)(1), Dec. 22, 2010, 124 Stat. 3557.)

Notes of Decisions (1584)

§ 101. Definitions, 11 USCA § 101

Footnotes

1       Dollar amount as adjusted by the Judicial Conference of the United States. See Adjustment of Dollar Amounts notes set out under
        this section and 11 U.S.C.A. § 104.
2       So in original. A comma should probably appear.
3       So in original. Probably should be "or". See 2010 Amendments note set out under this section.
4       So in original. Par. (56A) was inserted between pars. (53C) and (53D).

11 U.S.C.A. § 101, 11 USCA § 101

Current through P.L. 113-36 (excluding P.L. 113-34) approved 9-18-13

**End of Document**                                               © 2013 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
  Title 11. Bankruptcy (Refs & Annos)
    Chapter 5. Creditors, the Debtor, and the Estate (Refs & Annos)
    Subchapter I. Creditors and Claims

<div align="center">

11 U.S.C.A. § 507

§ 507. Priorities

Effective: December 22, 2010
Currentness

</div>

(a) The following expenses and claims have priority in the following order:

(1) First:

(A) Allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition in a case under this title, are owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative, without regard to whether the claim is filed by such person or is filed by a governmental unit on behalf of such person, on the condition that funds received under this paragraph by a governmental unit under this title after the date of the filing of the petition shall be applied and distributed in accordance with applicable nonbankruptcy law.

(B) Subject to claims under subparagraph (A), allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition, are assigned by a spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative to a governmental unit (unless such obligation is assigned voluntarily by the spouse, former spouse, child, parent, legal guardian, or responsible relative of the child for the purpose of collecting the debt) or are owed directly to or recoverable by a governmental unit under applicable nonbankruptcy law, on the condition that funds received under this paragraph by a governmental unit under this title after the date of the filing of the petition be applied and distributed in accordance with applicable nonbankruptcy law.

(C) If a trustee is appointed or elected under section 701, 702, 703, 1104, 1202, or 1302, the administrative expenses of the trustee allowed under paragraphs (1)(A), (2), and (6) of section 503(b) shall be paid before payment of claims under subparagraphs (A) and (B), to the extent that the trustee administers assets that are otherwise available for the payment of such claims.

(2) Second, administrative expenses allowed under section 503(b) of this title, unsecured claims of any Federal reserve bank related to loans made through programs or facilities authorized under section 13(3) of the Federal Reserve Act (12 U.S.C. 343), and any fees and charges assessed against the estate under chapter 123 of title 28.

(3) Third, unsecured claims allowed under section 502(f) of this title.

(4) Fourth, allowed unsecured claims, but only to the extent of $12,475 [1] for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for--

    (A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or

    (B) sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor in the sale of goods or services for the debtor in the ordinary course of the debtor's business if, and only if, during the 12 months preceding that date, at least 75 percent of the amount that the individual or corporation earned by acting as an independent contractor in the sale of goods or services was earned from the debtor.

(5) Fifth, allowed unsecured claims for contributions to an employee benefit plan--

    (A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

    (B) for each such plan, to the extent of--

        (i) the number of employees covered by each such plan multiplied by $12,475 [1] ; less

        (ii) the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

(6) Sixth, allowed unsecured claims of persons--

    (A) engaged in the production or raising of grain, as defined in section 557(b) of this title, against a debtor who owns or operates a grain storage facility, as defined in section 557(b) of this title, for grain or the proceeds of grain, or

    (B) engaged as a United States fisherman against a debtor who has acquired fish or fish produce from a fisherman through a sale or conversion, and who is engaged in operating a fish produce storage or processing facility--

but only to the extent of $6,150 [1] for each such individual.

(7) Seventh, allowed unsecured claims of individuals, to the extent of $2,775 [1] for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, lease, or rental of property, or the purchase of services, for the personal, family, or household use of such individuals, that were not delivered or provided.

(8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for--

**(A)** a tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition--

  **(i)** for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

  **(ii)** assessed within 240 days before the date of the filing of the petition, exclusive of--

    **(I)** any time during which an offer in compromise with respect to that tax was pending or in effect during that 240-day period, plus 30 days; and

    **(II)** any time during which a stay of proceedings against collections was in effect in a prior case under this title during that 240-day period, plus 90 days; or

  **(iii)** other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case;

**(B)** a property tax incurred before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition;

**(C)** a tax required to be collected or withheld and for which the debtor is liable in whatever capacity;

**(D)** an employment tax on a wage, salary, or commission of a kind specified in paragraph (4) of this subsection earned from the debtor before the date of the filing of the petition, whether or not actually paid before such date, for which a return is last due, under applicable law or under any extension, after three years before the date of the filing of the petition;

**(E)** an excise tax on--

  **(i)** a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or

  **(ii)** if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition;

**(F)** a customs duty arising out of the importation of merchandise--

  **(i)** entered for consumption within one year before the date of the filing of the petition;

**(ii)** covered by an entry liquidated or reliquidated within one year before the date of the filing of the petition; or

**(iii)** entered for consumption within four years before the date of the filing of the petition but unliquidated on such date, if the Secretary of the Treasury certifies that failure to liquidate such entry was due to an investigation pending on such date into assessment of antidumping or countervailing duties or fraud, or if information needed for the proper appraisement or classification of such merchandise was not available to the appropriate customs officer before such date; or

**(G)** a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss.

An otherwise applicable time period specified in this paragraph shall be suspended for any period during which a governmental unit is prohibited under applicable nonbankruptcy law from collecting a tax as a result of a request by the debtor for a hearing and an appeal of any collection action taken or proposed against the debtor, plus 90 days; plus any time during which the stay of proceedings was in effect in a prior case under this title or during which collection was precluded by the existence of 1 or more confirmed plans under this title, plus 90 days.

**(9)** Ninth, allowed unsecured claims based upon any commitment by the debtor to a Federal depository institutions regulatory agency (or predecessor to such agency) to maintain the capital of an insured depository institution.

**(10)** Tenth, allowed claims for death or personal injury resulting from the operation of a motor vehicle or vessel if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance.

**(b)** If the trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(2) of this section arising from the stay of action against such property under section 362 of this title, from the use, sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection.

**(c)** For the purpose of subsection (a) of this section, a claim of a governmental unit arising from an erroneous refund or credit of a tax has the same priority as a claim for the tax to which such refund or credit relates.

**(d)** An entity that is subrogated to the rights of a holder of a claim of a kind specified in subsection (a)(1), (a)(4), (a)(5), (a)(6), (a)(7), (a)(8), or (a)(9) of this section is not subrogated to the right of the holder of such claim to priority under such subsection.

**CREDIT(S)**

(Pub.L. 95-598, Nov. 6, 1978, 92 Stat. 2583; Pub.L. 98-353, Title III, §§ 350, 449, July 10, 1984, 98 Stat. 358, 374; Pub.L. 101-647, Title XXV, § 2522(d), Nov. 29, 1990, 104 Stat. 4867; Pub.L. 103-394, Title I, § 108(c), Title II, § 207, Title III, § 304(c), Title V, § 501(b)(3), (d)(11), Oct. 22, 1994, 108 Stat. 4112, 4123, 4132, 4142, 4145; Pub.L. 109-8, Title II, §§ 212, 223, Title VII, §§ 705, 706, Title XIV, § 1401, Title XV, § 1502(a)(1), Apr. 20, 2005, 119 Stat. 51, 62, 126, 214, 216; Pub.L. 111-203, Title XI, § 1101(b), July 21, 2010, 124 Stat. 2115; Pub.L. 111-327, § 2(a)(15), Dec. 22, 2010, 124 Stat. 3559.)

Notes of Decisions (1148)

§ 507. Priorities, 11 USCA § 507

Footnotes

1    Dollar amount as adjusted by the Judicial Conference of the United States. See Adjustment of Dollar Amounts notes set out under this section and 11 U.S.C.A. § 104.

11 U.S.C.A. § 507, 11 USCA § 507

Current through P.L. 113-36 (excluding P.L. 113-34) approved 9-18-13

**End of Document**                    © 2013 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
  Title 11. Bankruptcy (Refs & Annos)
    Chapter 13. Adjustment of Debts of an Individual with Regular Income (Refs & Annos)
      Subchapter II. The Plan

11 U.S.C.A. § 1328

§ 1328. Discharge

Currentness

**(a)** Subject to subsection (d), as soon as practicable after completion by the debtor of all payments under the plan, and in the case of a debtor who is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, after such debtor certifies that all amounts payable under such order or such statute that are due on or before the date of the certification (including amounts due before the petition was filed, but only to the extent provided for by the plan) have been paid, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt--

**(1)** provided for under section 1322(b)(5);

**(2)** of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a);

**(3)** for restitution, or a criminal fine, included in a sentence on the debtor's conviction of a crime; or

**(4)** for restitution, or damages, awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused personal injury to an individual or the death of an individual.

**(b)** Subject to subsection (d), at any time after the confirmation of the plan and after notice and a hearing, the court may grant a discharge to a debtor that has not completed payments under the plan only if--

**(1)** the debtor's failure to complete such payments is due to circumstances for which the debtor should not justly be held accountable;

**(2)** the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 of this title on such date; and

**(3)** modification of the plan under section 1329 of this title is not practicable.

**(c)** A discharge granted under subsection (b) of this section discharges the debtor from all unsecured debts provided for by the plan or disallowed under section 502 of this title, except any debt--

**(1)** provided for under section 1322(b)(5) of this title; or

**(2)** of a kind specified in section 523(a) of this title.

**(d)** Notwithstanding any other provision of this section, a discharge granted under this section does not discharge the debtor from any debt based on an allowed claim filed under section 1305(a)(2) of this title if prior approval by the trustee of the debtor's incurring such debt was practicable and was not obtained.

**(e)** On request of a party in interest before one year after a discharge under this section is granted, and after notice and a hearing, the court may revoke such discharge only if--

**(1)** such discharge was obtained by the debtor through fraud; and

**(2)** the requesting party did not know of such fraud until after such discharge was granted.

**(f)** Notwithstanding subsections (a) and (b), the court shall not grant a discharge of all debts provided for in the plan or disallowed under section 502, if the debtor has received a discharge--

**(1)** in a case filed under chapter 7, 11, or 12 of this title during the 4-year period preceding the date of the order for relief under this chapter, or

**(2)** in a case filed under chapter 13 of this title during the 2-year period preceding the date of such order.

**(g)(1)** The court shall not grant a discharge under this section to a debtor unless after filing a petition the debtor has completed an instructional course concerning personal financial management described in section 111.

**(2)** Paragraph (1) shall not apply with respect to a debtor who is a person described in section 109(h)(4) or who resides in a district for which the United States trustee (or the bankruptcy administrator, if any) determines that the approved instructional courses are not adequate to service the additional individuals who would otherwise be required to complete such instructional course by reason of the requirements of paragraph (1).

**(3)** The United States trustee (or the bankruptcy administrator, if any) who makes a determination described in paragraph (2) shall review such determination not later than 1 year after the date of such determination, and not less frequently than annually thereafter.

**(h)** The court may not grant a discharge under this chapter unless the court after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge finds that there is no reasonable cause to believe that--

**(1)** section 522(q)(1) may be applicable to the debtor; and

§ 1328. Discharge, 11 USCA § 1328

**(2)** there is pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B).

**CREDIT(S)**

(Pub.L. 95-598, Nov. 6, 1978, 92 Stat. 2650; Pub.L. 98-353, Title III, § 532, July 10, 1984, 98 Stat. 389; Pub.L. 101-508, Title III, § 3007(b)(1), Nov. 5, 1990, 104 Stat. 1388-28; Pub.L. 101-581, §§ 2(b), 3, Nov. 15, 1990, 104 Stat. 2865; Pub.L. 101-647, Title XXXI, §§ 3102(b), 3103, Nov. 29, 1990, 104 Stat. 4916; Pub.L. 103-394, Title III, § 302, Title V, § 501(d)(38), Oct. 22, 1994, 108 Stat. 4132, 4147; Pub.L. 109-8, Title I, § 106(c), Title II, § 213(11), Title III, §§ 312(2), 314(b), 330(d), Title VII, § 707, Apr. 20, 2005, 119 Stat. 38, 53, 87, 88, 102, 126.)

Notes of Decisions (271)

11 U.S.C.A. § 1328, 11 USCA § 1328
Current through P.L. 113-36 (excluding P.L. 113-34) approved 9-18-13

**End of Document**                                   © 2013 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
  Title 11. Bankruptcy (Refs & Annos)
    Chapter 5. Creditors, the Debtor, and the Estate (Refs & Annos)
      Subchapter II. Debtor's Duties and Benefits

<div align="center">

11 U.S.C.A. § 523

§ 523. Exceptions to discharge

Effective: December 22, 2010
Currentness

</div>

    &lt;Notes of Decisions for 11 USCA § 523 are displayed in two separate documents. Notes of Decisions for subdivisions I to XVI are contained in this document. For Notes of Decisions for subdivisions XVII to end, see second document for 11 USCA § 523.&gt;

**(a)** A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--

  **(1)** for a tax or a customs duty--

    **(A)** of the kind and for the periods specified in section 507(a)(3) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;

    **(B)** with respect to which a return, or equivalent report or notice, if required--

      **(i)** was not filed or given; or

      **(ii)** was filed or given after the date on which such return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or

    **(C)** with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax;

  **(2)** for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--

    **(A)** false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

    **(B)** use of a statement in writing--

§ 523. Exceptions to discharge, 11 USCA § 523

**(i)** that is materially false;

**(ii)** respecting the debtor's or an insider's financial condition;

**(iii)** on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

**(iv)** that the debtor caused to be made or published with intent to deceive; or

**(C)(i)** for purposes of subparagraph (A)--

**(I)** consumer debts owed to a single creditor and aggregating more than $650 [1] for luxury goods or services incurred by an individual debtor on or within 90 days before the order for relief under this title are presumed to be nondischargeable; and

**(II)** cash advances aggregating more than $925 [1] that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within 70 days before the order for relief under this title, are presumed to be nondischargeable; and

**(ii)** for purposes of this subparagraph--

**(I)** the terms "consumer", "credit", and "open end credit plan" have the same meanings as in section 103 of the Truth in Lending Act; and

**(II)** the term "luxury goods or services" does not include goods or services reasonably necessary for the support or maintenance of the debtor or a dependent of the debtor;

**(3)** neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit--

**(A)** if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

**(B)** if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request;

**(4)** for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

(5) for a domestic support obligation;

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty--

   (A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or

   (B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition;

(8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for--

   (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or

   (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or

   (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual;

(9) for death or personal injury caused by the debtor's operation of a motor vehicle, vessel, or aircraft if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance;

(10) that was or could have been listed or scheduled by the debtor in a prior case concerning the debtor under this title or under the Bankruptcy Act in which the debtor waived discharge, or was denied a discharge under section 727(a)(2), (3), (4), (5), (6), or (7) of this title, or under section 14c(1), (2), (3), (4), (6), or (7) of such Act;

(11) provided in any final judgment, unreviewable order, or consent order or decree entered in any court of the United States or of any State, issued by a Federal depository institutions regulatory agency, or contained in any settlement agreement entered into by the debtor, arising from any act of fraud or defalcation while acting in a fiduciary capacity committed with respect to any depository institution or insured credit union;

(12) for malicious or reckless failure to fulfill any commitment by the debtor to a Federal depository institutions regulatory agency to maintain the capital of an insured depository institution, except that this paragraph shall not extend any such commitment which would otherwise be terminated due to any act of such agency;

(13) for any payment of an order of restitution issued under title 18, United States Code;

**(14)** incurred to pay a tax to the United States that would be nondischargeable pursuant to paragraph (1);

**(14A)** incurred to pay a tax to a governmental unit, other than the United States, that would be nondischargeable under paragraph (1);

**(14B)** incurred to pay fines or penalties imposed under Federal election law;

**(15)** to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit;

**(16)** for a fee or assessment that becomes due and payable after the order for relief to a membership association with respect to the debtor's interest in a unit that has condominium ownership, in a share of a cooperative corporation, or a lot in a homeowners association, for as long as the debtor or the trustee has a legal, equitable, or possessory ownership interest in such unit, such corporation, or such lot, but nothing in this paragraph shall except from discharge the debt of a debtor for a membership association fee or assessment for a period arising before entry of the order for relief in a pending or subsequent bankruptcy case;

**(17)** for a fee imposed on a prisoner by any court for the filing of a case, motion, complaint, or appeal, or for other costs and expenses assessed with respect to such filing, regardless of an assertion of poverty by the debtor under subsection (b) or (f)(2) of section 1915 of title 28 (or a similar non-Federal law), or the debtor's status as a prisoner, as defined in section 1915(h) of title 28 (or a similar non-Federal law);

**(18)** owed to a pension, profit-sharing, stock bonus, or other plan established under section 401, 403, 408, 408A, 414, 457, or 501(c) of the Internal Revenue Code of 1986, under--

**(A)** a loan permitted under section 408(b)(1) of the Employee Retirement Income Security Act of 1974, or subject to section 72(p) of the Internal Revenue Code of 1986; or

**(B)** a loan from a thrift savings plan permitted under subchapter III of chapter 84 of title 5, that satisfies the requirements of section 8433(g) of such title;

but nothing in this paragraph may be construed to provide that any loan made under a governmental plan under section 414(d), or a contract or account under section 403(b), of the Internal Revenue Code of 1986 constitutes a claim or a debt under this title; or

**(19)** that--

**(A)** is for--

§ 523. Exceptions to discharge, 11 USCA § 523

**(i)** the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or

**(ii)** common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and

**(B)** results, before, on, or after the date on which the petition was filed, from--

**(i)** any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;

**(ii)** any settlement agreement entered into by the debtor; or

**(iii)** any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

For purposes of this subsection, the term "return" means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements). Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.

**(b)** Notwithstanding subsection (a) of this section, a debt that was excepted from discharge under subsection (a)(1), (a)(3), or (a)(8) of this section, under section 17a(1), 17a(3), or 17a(5) of the Bankruptcy Act, under section 439A of the Higher Education Act of 1965, or under section 733(g) of the Public Health Service Act in a prior case concerning the debtor under this title, or under the Bankruptcy Act, is dischargeable in a case under this title unless, by the terms of subsection (a) of this section, such debt is not dischargeable in the case under this title.

**(c)(1)** Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section.

**(2)** Paragraph (1) shall not apply in the case of a Federal depository institutions regulatory agency seeking, in its capacity as conservator, receiver, or liquidating agent for an insured depository institution, to recover a debt described in subsection (a)(2), (a)(4), (a)(6), or (a)(11) owed to such institution by an institution-affiliated party unless the receiver, conservator, or liquidating agent was appointed in time to reasonably comply, or for a Federal depository institutions regulatory agency acting in its corporate capacity as a successor to such receiver, conservator, or liquidating agent to reasonably comply, with subsection (a)(3)(B) as a creditor of such institution-affiliated party with respect to such debt.

**(d)** If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee

for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

**(e)** Any institution-affiliated party of an insured depository institution shall be considered to be acting in a fiduciary capacity with respect to the purposes of subsection (a)(4) or (11).

**CREDIT(S)**

(Pub.L. 95-598, Nov. 6, 1978, 92 Stat. 2590; Pub.L. 96-56, § 3, Aug. 14, 1979, 93 Stat. 387; Pub.L. 97-35, Title XXIII, § 2334(b), Aug. 13, 1981, 95 Stat. 863; Pub.L. 98-353, Title III, §§ 307, 371, 454, July 10, 1984, 98 Stat. 353, 364, 375; Pub.L. 99-554, Title II, §§ 257(n), 281, 283(j), Oct. 27, 1986, 100 Stat. 3115 to 3117; Pub.L. 101-581, § 2(a), Nov. 15, 1990, 104 Stat. 2865; Pub.L. 101-647, Title XXV, § 2522(a), Title XXXI, § 3102(a), Title XXXVI, § 3621, Nov. 29, 1990, 104 Stat. 4865, 4916, 4964; Pub.L. 103-322, Title XXXII, § 320934, Sept. 13, 1994, 108 Stat. 2135; Pub.L. 103-394, Title II, § 221, Title III, §§ 304(e), (h)(3), 306, 309, Title V, § 501(d)(13), Oct. 22, 1994, 108 Stat. 4129, 4133 to 4135, 4137, 4145; Pub.L. 104-134, Title I, § 101[(a)][Title VIII, § 804(b)], Apr. 26, 1996, 110 Stat. 1321-74; renumbered Title I Pub.L. 104-140, § 1(a), May 2, 1996, 110 Stat. 1327; amended Pub.L. 104-193, Title III, § 374(a), Aug. 22, 1996, 110 Stat. 2255; Pub.L. 105-244, Title IX, § 971(a), Oct. 7, 1998, 112 Stat. 1837; Pub.L. 107-204, Title VIII, § 803, July 30, 2002, 116 Stat. 801; Pub.L. 109-8, Title II, §§ 215, 220, 224(c), Title III, §§ 301, 310, 314(a), Title IV, § 412, Title VII, § 714, Title XII, §§ 1209, 1235, Title XIV, § 1404(a), Title XV, § 1502(a)(2), Apr. 20, 2005, 119 Stat. 54, 59, 64, 75, 84, 88, 107, 128, 194, 204, 215, 216; Pub.L. 111-327, § 2(a)(18), Dec. 22, 2010, 124 Stat. 3559.)

Notes of Decisions (5472)

Footnotes

1    Dollar amount as adjusted by the Judicial Conference of the United States. See Adjustment of Dollar Amounts notes set out under this section and 11 U.S.C.A. § 104.

11 U.S.C.A. § 523, 11 USCA § 523

Current through P.L. 113-36 (excluding P.L. 113-34) approved 9-18-13

**End of Document**                                    © 2013 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
  Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)
    Title III. Pleadings and Motions

Federal Rules of Civil Procedure Rule 12

Rule 12. Defenses and Objections: When and How Presented; Motion for Judgment
on the Pleadings; Consolidating Motions; Waiving Defenses; Pretrial Hearing

Currentness

<Notes of Decisions for 28 USCA Federal Rules of Civil Procedure Rule 12 are displayed in two separate documents. Notes of Decisions for subdivisions I to VII are contained in this document. For Notes of Decisions for subdivisions VIII to end, see second document for 28 USCA Federal Rules of Civil Procedure Rule 12.>

**(a) Time to Serve a Responsive Pleading.**

**(1)** *In General.* Unless another time is specified by this rule or a federal statute, the time for serving a responsive pleading is as follows:

**(A)** A defendant must serve an answer:

**(i)** within 21 days after being served with the summons and complaint; or

**(ii)** if it has timely waived service under Rule 4(d), within 60 days after the request for a waiver was sent, or within 90 days after it was sent to the defendant outside any judicial district of the United States.

**(B)** A party must serve an answer to a counterclaim or crossclaim within 21 days after being served with the pleading that states the counterclaim or crossclaim.

**(C)** A party must serve a reply to an answer within 21 days after being served with an order to reply, unless the order specifies a different time.

**(2)** *United States and Its Agencies, Officers, or Employees Sued in an Official Capacity.* The United States, a United States agency, or a United States officer or employee sued only in an official capacity must serve an answer to a complaint, counterclaim, or crossclaim within 60 days after service on the United States attorney.

**(3)** *United States Officers or Employees Sued in an Individual Capacity.* A United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf must serve an answer to a complaint, counterclaim, or crossclaim within 60 days after service on the officer or employee or service on the United States attorney, whichever is later.

**(4)** *Effect of a Motion.* Unless the court sets a different time, serving a motion under this rule alters these periods as follows:

    **(A)** if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action; or

    **(B)** if the court grants a motion for a more definite statement, the responsive pleading must be served within 14 days after the more definite statement is served.

**(b) How to Present Defenses.** Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

    **(1)** lack of subject-matter jurisdiction;

    **(2)** lack of personal jurisdiction;

    **(3)** improper venue;

    **(4)** insufficient process;

    **(5)** insufficient service of process;

    **(6)** failure to state a claim upon which relief can be granted; and

    **(7)** failure to join a party under Rule 19.

A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim. No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.

**(c) Motion for Judgment on the Pleadings.** After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings.

**(d) Result of Presenting Matters Outside the Pleadings.** If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

**(e) Motion for a More Definite Statement.** A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must

be made before filing a responsive pleading and must point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

**(f) Motion to Strike.** The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:

**(1)** on its own; or

**(2)** on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

**(g) Joining Motions.**

**(1)** *Right to Join.* A motion under this rule may be joined with any other motion allowed by this rule.

**(2)** *Limitation on Further Motions.* Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

**(h) Waiving and Preserving Certain Defenses.**

**(1)** *When Some Are Waived.* A party waives any defense listed in Rule 12(b)(2)-(5) by:

**(A)** omitting it from a motion in the circumstances described in Rule 12(g)(2); or

**(B)** failing to either:

**(i)** make it by motion under this rule; or

**(ii)** include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course.

**(2)** *When to Raise Others.* Failure to state a claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal defense to a claim may be raised:

**(A)** in any pleading allowed or ordered under Rule 7(a);

**(B)** by a motion under Rule 12(c); or

**(C)** at trial.

**(3) *Lack of Subject-Matter Jurisdiction.*** If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.

**(i) Hearing Before Trial.** If a party so moves, any defense listed in Rule 12(b)(1)-(7)--whether made in a pleading or by motion--and a motion under Rule 12(c) must be heard and decided before trial unless the court orders a deferral until trial.

**CREDIT(S)**

(Amended December 27, 1946, effective March 19, 1948; January 21, 1963, effective July 1, 1963; February 28, 1966, effective July 1, 1966; March 2, 1987, effective August 1, 1987; April 22, 1993, effective December 1, 1993; April 17, 2000, effective December 1, 2000; April 30, 2007, effective December 1, 2007; March 26, 2009, effective December 1, 2009.)

**ADVISORY COMMITTEE NOTES**
1937 Adoption

**Note to Subdivision (a). 1.** Compare [former] Equity Rules 12 (Issue of Subpoena--Time for Answer) and 31 (Reply--When Required--When Cause at Issue); 4 Mont.Rev.Codes Ann. (1935) §§ 9107, 9158; N.Y.C. P.A. (1937) § 263; N.Y.R.C.P. (1937) Rules 109-111.

**2.** U.S.C., Title 28, § 763 (now § 547) (Petition in action against United States; service; appearance by district attorney) provides that the United States as a defendant shall have 60 days within which to answer or otherwise defend. This and other statutes which provide 60 days for the United States or an officer or agency thereof to answer or otherwise defend are continued by this rule. In so far as any statutes not excepted in rule 81 provide a different time for a defendant to defend, such statutes are modified. See U.S.C., Title 28, [former] § 45 (District courts; practice and procedure in certain cases under the interstate commerce laws) (30 days).

**3.** Compare the last sentence of [former] Equity Rule 29 (Defenses--How Presented) and N.Y.C.P.A. (1937) § 283. See Rule 15(a) for time within which to plead to an amended pleading.

**Note to Subdivisions (b) and (d). 1.** See generally [former] Equity Rules 29 (Defenses--How Presented), 33 (Testing Sufficiency of Defense), 43 (Defect of Parties--Resisting Objection), and 44 (Defect of Parties--Tardy Objection); N.Y.C.P.A. (1937) §§ 277-280; N.Y.R.C.P. (1937) Rules 106-112; *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 25, r.r. 1-4; Clark, *Code Pleading*, 1928, pp. 371-381.

**2.** For provisions authorizing defenses to be made in the answer or reply see *English Rules Under the Judicature Act*, (The Annual Practice, 1937) O. 25, r.r. 1-4; 1 Miss.Code Ann. (1930) §§ 378, 379. Compare Equity Rule 29 (Defenses--How Presented); U.S.C.A., Title 28, [former] § 45 (District Courts; practice and procedure in certain cases under the interstate commerce laws). U.S.C., Title 28, [former] § 45, substantially continued by this rule, provides: "No replication need be filed to the answer, and objections to the sufficiency of the petition or answer as not setting forth a cause of action or defense must be taken at the final hearing or by motion to dismiss the petition based on said grounds, which motion may be made at any time before answer is filed." Compare Calif.Code Civ.Proc., (Deering, 1937) § 433; 4 Nev.Comp.Laws (Hillyer, 1929) § 8600. For provisions that the defendant may demur and answer at the same time, see Calif.Code Civ.Proc. (Deering, 1937) § 431; 4 Nev.Comp.Laws (Hillyer, 1929) § 8598.

United States Code Annotated
  Federal Rules of Bankruptcy Procedure (Refs & Annos)
    Part VII. Adversary Proceedings

Federal Rules of Bankruptcy Procedure, Rule 7001

Rule 7001. Scope of Rules of Part VII

Currentness

An adversary proceeding is governed by the rules of this Part VII. The following are adversary proceedings:

(1) a proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee, or a proceeding under § 554(b) or § 725 of the Code, Rule 2017, or Rule 6002;

(2) a proceeding to determine the validity, priority, or extent of a lien or other interest in property, other than a proceeding under Rule 4003(d);

(3) a proceeding to obtain approval under § 363(h) for the sale of both the interest of the estate and of a co-owner in property;

(4) a proceeding to object to or revoke a discharge, other than an objection to discharge under §§ [1] 727(a)(8), (a)(9), or 1328(f);

(5) a proceeding to revoke an order of confirmation of a chapter 11, chapter 12, or chapter 13 plan;

(6) a proceeding to determine the dischargeability of a debt;

(7) a proceeding to obtain an injunction or other equitable relief, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief;

(8) a proceeding to subordinate any allowed claim or interest, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for subordination;

(9) a proceeding to obtain a declaratory judgment relating to any of the foregoing; or

(10) a proceeding to determine a claim or cause of action removed under 28 U.S.C. § 1452.

**CREDIT(S)**
  (As amended Mar. 30, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Aug. 1, 1991; Apr. 26, 1999, eff. Dec. 1, 1999; Apr. 28, 2010, eff. Dec. 1, 2010.)

**ADVISORY COMMITTEE NOTES**

The rules in Part VII govern the procedural aspects of litigation involving the matters referred to in this Rule 7001. Under Rule 9014 some of the Part VII rules also apply to contested matters.

These Part VII rules are based on the premise that to the extent possible practice before the bankruptcy courts and the district courts should be the same. These rules either incorporate or are adaptations of most of the Federal Rules of Civil Procedure. Although the Part VII rules of the former Bankruptcy Rules also relied heavily on the F.R.Civ.P., the former Part VII rules departed from the civil practice in two significant ways: a trial or pretrial conference had to be scheduled as soon as the adversary proceeding was filed and pleadings had to be filed within periods shorter than those established by the F.R.Civ.P. These departures from the civil practice have been eliminated.

The content and numbering of these Part VII rules correlate to the content and numbering of the F.R.Civ.P. Most, but not all, of the F.R.Civ.P. have a comparable Part VII rule. When there is no Part VII rule with a number corresponding to a particular F.R.Civ.P., Parts V and IX of these rules must be consulted to determine if one of the rules in those parts deals with the subject. The list below indicates the F.R.Civ.P., or subdivision thereof, covered by a rule in either Part V or Part IX.

| F.R.Civ.P. | Rule in Part V or IX |
| --- | --- |
| 6 | 9006 |
| 7(b) | 9013 |
| 10(a) | 9004(b) |
| 11 | 9011 |
| 38, 39 | 9015(a)-(e) |
| 47-51 | 9015(f) |
| 43, 44, 44.1 | 9017 |
| 45 | 9016 |
| 58 | 9021 |
| 59 | 9023 |
| 60 | 9024 |
| 61 | 9005 |
| 63 | 9028 |
| 77(a), (b), (c) | 5001 |
| 77(d) | 9022(d) |
| 79(a)-(d) | 5003 |
| 81(c) | 9027 |
| 83 | 9029 |

92                                          9030

Proceedings to which the rules in Part VII apply directly include those brought to avoid transfers by the debtor under §§ 544, 545, 547, 548 and 549 of the Code; subject to important exceptions, proceedings to recover money or property; proceedings on bonds under Rules 5008(d) and 9025; proceedings under Rule 4004 to determine whether a discharge in a chapter 7 or 11 case should be denied because of an objection grounded on § 727 and proceedings in a chapter 7 or 13 case to revoke a discharge as provided in §§ 727(d) or 1328(e); and proceedings initiated pursuant to § 523(c) of the Code to determine the dischargeability of a particular debt. Those proceedings were classified as adversary proceedings under former Bankruptcy Rule 701.

Also included as adversary proceedings are proceedings to revoke an order of confirmation of a plan in a chapter 11 or 13 case as provided in §§ 1144 and 1330, to subordinate under § 510(c), other than as part of a plan, an allowed claim or interest, and to sell under § 363(h) both the interest of the estate and a co-owner in property.

Declaratory judgments with respect to the subject matter of the various adversary proceedings are also adversary proceedings.

Any claim or cause of action removed to a bankruptcy court pursuant to 28 U.S.C. § 1478 is also an adversary proceeding.

Unlike former Bankruptcy Rule 701, requests for relief from an automatic stay do not commence an adversary proceeding. Section 362(e) of the Code and Rule 4001 establish an expedited schedule for judicial disposition of requests for relief from the automatic stay. The formalities of the adversary proceeding process and the time for serving pleadings are not well suited to the expedited schedule. The motion practice prescribed in Rule 4001 is best suited to such requests because the court has the flexibility to fix hearing dates and other deadlines appropriate to the particular situation.

Clause (1) contains important exceptions. A person with an interest in property in the possession of the trustee or debtor in possession may seek to recover or reclaim that property under § 554(b) or § 725 of the Code. Since many attempts to recover or reclaim property under these two sections do not generate disputes, application of the formalities of the Part VII Rules is not appropriate. Also excluded from adversary proceedings is litigation arising from an examination under Rule 2017 of a debtor's payments of money or transfers of property to an attorney representing the debtor in a case under the Code or an examination of a superseded administration under Rule 6002.

Exemptions and objections thereto are governed by Rule 4003. Filing of proofs of claim and the allowances thereof are governed by Rules 3001-3005, and objections to claims are governed by Rule 3007. When an objection to a claim is joined with a demand for relief of the kind specified in this Rule 7001, the matter becomes an adversary proceeding. See Rule 3007.

1987 Amendment

Another exception is added to clause (1). A trustee may proceed by motion to recover property from the debtor.

1991 Amendment

Clauses (5) and (8) are amended to include chapter 12 plans.

1999 Amendments

This rule is amended to recognize that an adversary proceeding is not necessary to obtain injunctive or other equitable relief that is provided for in a plan under circumstances in which substantive law permits the relief. Other amendments are stylistic.

**GAP Report on Rule 7001.** No changes since publication, except for stylistic changes.

Rule 7001. Scope of Rules of Part VII, FRBP Rule 7001

2010 Amendments

Paragraph (4) of the rule is amended to create an exception for objections to discharge under §§ 727(a)(8), (a)(9), and 1328(f) of the Code. Because objections to discharge on these grounds typically present issues more easily resolved than other objections to discharge, the more formal procedures applicable to adversary proceedings, such as commencement by a complaint, are not required. Instead, objections on these three grounds are governed by Rule 4004(d). In an appropriate case, however, Rule 9014(c) allows the court to order that additional provisions of Part VII of the rules apply to these matters.

Notes of Decisions (188)

Footnotes

1       So in original. Probably should be only one section symbol.

Fed.Rules Bankr.Proc. Rule 7001, 11 U.S.C.A., FRBP Rule 7001

Including Amendments Through 7-1-13

End of Document

© 2013 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
  Federal Rules of Bankruptcy Procedure (Refs & Annos)
    Part VII. Adversary Proceedings

Federal Rules of Bankruptcy Procedure, Rule 7012

Rule 7012. Defenses and Objections--When and How Presented--
By Pleading or Motion--Motion for Judgment on the Pleadings

Currentness

(a) When presented

If a complaint is duly served, the defendant shall serve an answer within 30 days after the issuance of the summons, except when a different time is prescribed by the court. The court shall prescribe the time for service of the answer when service of a complaint is made by publication or upon a party in a foreign country. A party served with a pleading stating a cross-claim shall serve an answer thereto within 21 days after service. The plaintiff shall serve a reply to a counterclaim in the answer within 21 days after service of the answer or, if a reply is ordered by the court, within 21 days after service of the order, unless the order otherwise directs. The United States or an officer or agency thereof shall serve an answer to a complaint within 35 days after the issuance of the summons, and shall serve an answer to a cross-claim, or a reply to a counterclaim, within 35 days after service upon the United States attorney of the pleading in which the claim is asserted. The service of a motion permitted under this rule alters these periods of time as follows, unless a different time is fixed by order of the court: (1) if the court denies the motion or postpones its disposition until the trial on the merits, the responsive pleading shall be served within 14 days after notice of the court's action; (2) if the court grants a motion for a more definite statement, the responsive pleading shall be served within 14 days after the service of a more definite statement.

(b) Applicability of Rule 12(b)-(i) F.R.Civ.P.

Rule 12(b)-(i) F.R.Civ.P. applies in adversary proceedings. A responsive pleading shall admit or deny an allegation that the proceeding is core or non-core. If the response is that the proceeding is non-core, it shall include a statement that the party does or does not consent to entry of final orders or judgment by the bankruptcy judge. In non-core proceedings final orders and judgments shall not be entered on the bankruptcy judge's order except with the express consent of the parties.

**CREDIT(S)**
  (As amended Mar. 30, 1987, eff. Aug. 1, 1987; Apr. 23, 2008, eff. Dec. 1, 2008; Mar. 26, 2009, eff. Dec. 1, 2009.)

**ADVISORY COMMITTEE NOTES**
**Subdivision (a)** continues the practice of former Bankruptcy Rule 712(a) by requiring that the answer to a complaint be filed within 30 days after the issuance of the summons. Under Rule 7004(f), the summons must be served within 10 days of issuance. The other pleading periods in adversary proceedings are the same as those in civil actions before the district courts, except that the United States is allowed 35 rather than 60 days to respond.

Rule 12(b)(7) and (h)(2) F.R.Civ.P. refers to Rule 19 F.R.Civ.P. Pursuant to Rule 7002 these references are to Rule 19 F.R.Civ.P. as incorporated and modified by Rule 7019.

1987 Amendment

The amendment to subdivision (b) requires a response to the allegation that the proceeding is core or non-core. A final order of judgment may not be entered in a non-core proceeding heard by a bankruptcy judge unless all parties expressly consent. 28 U.S.C. § 157(c).

2008 Amendments

The rule is amended to conform to the changes made to the Federal Rules of Civil Procedure through the restyling of those rules effective on December 1, 2007.

2009 Amendments

The rule is amended to implement changes in connection with the amendment to Rule 9006(a) and the manner by which time is computed under the rules. The deadlines in the rule are amended to substitute a deadline that is a multiple of seven days. Throughout the rules, deadlines are amended in the following manner:

- 5-day periods become 7-day periods

- 10-day periods become 14-day periods

- 15-day periods become 14-day periods

- 20-day periods become 21-day periods

- 25-day periods become 28-day periods

Notes of Decisions (146)

Fed.Rules Bankr.Proc. Rule 7012, 11 U.S.C.A., FRBP Rule 7012
Including Amendments Through 7-1-13

**End of Document**                                      © 2013 Thomson Reuters. No claim to original U.S. Government Works.